Mr. Justice Hagner,
after making the foregoing statement of facts, delivered the opinion of the court.
The case has been elaborately argued by the counsel, and presents several questions of much interest,
1st. It is contended on behalf of the plaintiff* that however the practice may be in the State courts, under the common law rules, the circuit courts of the United States have no jurisdiction to strike out.one of their judgments after the expiration of the term at which it was rendered, inas-1 much as such authority could be exercised by a circuit court only under express statute, and no such statute exists.
Assuming, for the present, that the courts of this District. *243 possessed only the jurisdiction common to the other circuit courts of the United States, and are controlled by the limitations of power peculiar to such courts, we do not .believe they would be without jurisdiction to correct and vacate their judgments, after the expiration of the term, upon proper cause shown.
We were referred confidently to the case of Bronson vs. Schulten, 104 U. S., 410, as establishing, beyond controversy,, this contention of the plaintiff'. But an examination of that case has led us to a contrary conclusion.
It appears from the opinion of the court that a judgment was rendered on'verdict in the fall of 1858, in the Circuit Court of the United States for the Southern District of New York, in favor of Schulten and others against Bronson, collector, for the supposed amount of an overcharge of duties paid to the collector at New York city by the plaintiff's under protest.
In August, 1860, upon application of the plaintiffs, this judgment was set aside (apparently three terms after its rendition), and a new reference made ; under which the judgment was so amended as to embrace thirty-four cases of erroneous charges, not comprehended in the original entry;; and amount of this amended judgment was paid and accepted by plaintiff's shortly afterwards.
In December, 1876, another application was made to the-circuit court by-the plaintiffs to open the judgment a second: time for the purpose of including a number of additional cases of over-payment of duties, not comprehended in either-previous entry ; and, against the objection of the United. States district attorney, the circuit court in January, 1877, seventeen years ’ after the rendition of the amended judgment, ordered it to be vacated, and sent the case to a referee to state the damages anew, as prayed. The report of the referee in the following March found still due a considerable sum, with interest to an amount almost as large as the principal, and the circuit court rendered judgment for these sums, with costs added. More than thirty-three terms of that court had passed since the entry of the amended judg *244 ment; but the jurisdiction of the United States Circuit Court to open the judgment, does not appear to have been questioned in that tribunal.
On appeal, this judgment was reversed by the Supreme Court; and it is supposed that the opinion of that court, ■delivered by Mr. Justice Miller, announces the doctrine contended for.
If the Supreme Court had intended by that decision to ■settle the point in this direction, it is very astonishing it did not say so explicitly ' and dispose of the case in a few sentences. Surely no more flagrant case of usurpation of jurisdiction could well arise, if the position of the plaintiff" is correct. Apart from the great lapse of time, and the expiration of about forty terms from that of the original judgment, and of about thirty-three terms from the date of the amended judgment, the case seems to present few equitable considerations commending it to favorable consideration. Instead, however, of disposing of it upon this obvious ground (if such is the law), the justice who delivered the opinion, and who is distinguished by his directness of expression, occupies nearly eight pages of the report in showing, as he does, conclusively, that upon other grounds' the judgment should be reversed. He announces the general rule that courts have entire control over their judgments at the term at which they are rendered ; and then proceeds, in the language relied upon in the argument:
“But it is a rule equally well established that after the term has ended, all final judgments and decrees of the court pass beyond its control, unless steps be taken during that term, by motion, or otherwise, to set aside, modify, or correct them.” * * *
In the following paragraph he continues:
“But to this general rule an exception has crept into practice in a large number of the State courts in a class of cases not well defined, and about which, and about the limit of this exception, these courts are much at variance. * * This exception however has its foundation in the English writ *245 of coram vobis, a writ which was allowed to bring before the same court in which the error was committed some matter of fact which had escaped attention and which was material in the proceeding.”
After discussing at length this exception, he proceeds to state that:
" There has grown up, however, in the courts of law a tendency to apply to this control over their own judgments some-of the principles of the courts of equity in cases which go a little further in administering summary relief than the old-fashioned writ of error coram vobis did. This practice has been founded in the courts of many of the States on statutes which confer a prescribed and limited control over the judgment of a court after the expiration of the term at which it was rendered. In other cases the summary remedy by motion has been granted as founded in the inherent power of the court over its own judgments, and to avoid the expense and delay of a formal suit in chancery.”
And the learned judge then declares that neither the statute of New York, nor the decisions of its courts upon the subject, are binding upon the courts of the United States held therein, and adds :
. “ The question relates to the power of the courts, and not to the mode of procedure. It is whether there exists in the court the authority to set aside, vacate, and modify its final judgments after the term at which they were rendered ; and this authority can neither be conferred upon nor withheld from the courts of the United States by the statutes of a State or the practice of its courts.”
Having considered at length the grounds upon which courts of chancery interfered to set aside judgments after the term, he asks :
“ Hoes the power of the court over its own judgment, exercised in a summary manner, on motion, after the term at which it was rendered, extend beyond this ? ”
The court of which he was speaking was the Circuit Court of the United States for the Southern District of New York; *246 and it is inconceivable that the Supreme Court would have .assumed the task of examining the facts to ascertain whether they brought the case within the limits of these equitable principles, if it had intended to decide as was contended before us, that a circuit court of the United States was wholly without jurisdiction to give relief.
The judge proceeds: “We-are also of opinion that the .general current of authority in the courts of this country fixes the line beyond which they cannot go in setting aside their final judgments and decrees on motion made after the term at which they were rendered, far within the case made out here. If it is an equitable power supposed to be here exercised, we have shown that a court of equity, on the most formal proceeding, taken in due time, could not, according to its established principles, have granted the relief which was given in this case.”
And the decision of the court, reversing the order below, was placed solely upon the ground of the gross laches of the plaintiffs, and their acquiescence during seventeen years in the correctness of a judgment which had already once been amended at their instance, and afterwards had been paid to them, when the alleged error was easily discoverable by a comparison of their own papers, during all this time. ■“Having been negligent originally, and having slept on their rights for many years, they show no right, under any sound practice of the control of courts over their own judgments, to have that in this case set aside.”
We have examined this case at large, because of the earnestness with w'hich it was pressed upon us as decisive of the want of jurisdiction in the United States courts in this class of cases ; but in our opinion, so far from deciding, the principle contended for, it may well be invoked as an authority in support of that jurisdiction:
And such we understand to have been the ruling of the Supreme Court as far back as 1824, in the case of Walden vs. Craig, 9 Wheaton, 576; in 1832, in Boyle vs. Zacharie, 6 Peters, 648; in 1833, in Pickett vs. Legerswood, 7 Peters, 147; and again, in 1852, in Harris vs. Hardeman, 14 Howard, 337.
*247 In Walden vs. Craig, the circuit court of the United 'States for Kentucky, in 1821, refused t'o strike out a judgment in ejectment rendered in 1800, to enlarge the term stated in his declaration. Prom this order of refusal a writ of error was sued out to the Supreme Court. Chief Justice Marshall, speaking for the court, states the first question to be : “ Ought the circuit court to have granted leave to the plaintiff to extend the term laid in his declaration ? ” And answers for the court in these words: “ The cases cited by the plaintiff’s counsel in argument, are, we think, full authority for the amendment which was asked in the circuit court, and we think the motion ought to have prevailed.” And this after twenty years had intervened since the ■expiration of the judgment term.
The case in 14 Howard is as follows: In 1839 Harris recovered judgment against Hardeman, in the Circuit Court ■of the United States for the Southern District of Mississippi, by default, for want of appearance. In 1840 a fieri facias was issued on this judgment and levied upon the property of Hardeman, and a forthcoming bond was executed by him, with sureties, to prevent the sale of the property levied on.
At the May Term, 1850, eleven years after the rendition of the judgment, Hardeman and the sureties made an application to quash the forthcoming bond and set aside the judgment on which the bond was founded, upon the ground that there had never been a proper service of process upon Hardeman in the original case. The circuit court granted the motion, and on appeal the decision below was affirmed by the Supreme Court. In speaking of the jurisdiction of the cdurt below to strike out the judgment upon motion, the court says: “ it is believed to be the settled modern practice, that in all instances in which irregularities could formerly be corrected upon a writ of error eoram vobis or audita querela,, the same objects may be effected by motion to «the court as a mode more simple, miore expeditious, and less fruitful of difficulty and expense.”
The idea that courts of the United States have smaller *248 powers in this particular than the courts of the States does not seem to have then occurred to the Supreme Court - And it would be a most unfortunate necessity that would compel a court of the United States to declare itself powerless to set aside one of its own judgments, which had manifestly been obtained by fraud, deceit, irregularity or surprise, merely because the motion was made after the expiration of the term, and thus allow its process of execution to be pi'ostituted by the perpetrator of the fraud to the oppression of a citizen. For if the circuit courts of the United-States are without authority to interpose at law in such a case, because no statute has been passed granting the explicit authority, the sufferer would be practically remediless, since no State court could interfere in such a case with the judgment of a court of the United States. Although the exercise of this wholesome jurisdiction is regulated in some of the States by statute, we are clearly of the opinion that it must exist in every court of record as an inherent power, indispensable to prevent a failure of justice and the abuse and perversion of its judgments for unjust ends. And we can see no reason of policy or propriety why the courts of the United States should be so grievously enfeebled for good, as they would be,, if this power were denied them.
An examination of such of the reports of the decisions of the circuit courts as were accessible since the argument shows that this power has been exercised by their judges from time to time. Thus in Sheepshanks vs. Boyer, Baldwin’s C. C. R., 462, a judgment rendered by default at a previous term was stricken out on motion of an attorney, representing that he had ordered his appearance to be entered by the clerk, who had neglected to make the entry; and this without reference to merits in the defense.
In Den, ex dem., &c., vs. McAllister, 4 Wash. C. C. R., 393, it was decided that a judgment by default against the casual ejector for want of appearance may be set aside at a subsequent term upon good cause shown by affidavit of' merits.
*249 In Albree vs. Johnson, 1 Flippin, 341, a judgment was rendered in September, 1868, in the Circuit Court for the Northern Circuit of Ohio, against a female defendant named Johnson. Six years afterwards, application was made by Johnson and his wife who, according to the affidavits, was the sole defendant in the judgment, and was a married woman when it was rendered, upon the ground that it was, for this reason, void. The application was presented by petition for a writ of error coram nobis, and also by motion ; and Walker, circuit judge, apparently entertaining no doubt as to his jurisdiction to interfere under one form of proceeding or the other, examines which is the appropriate mode of redress. After citing a number of cases on the subject (among them Harris vs. Hardeman, 14 Howard), he says : “ These authorities, it seems to me clearly show that errors in fact can be reviewed on writ of error coram nobis, and that among the errors of fact against which relief will be granted, is coverture of the defendant at the time of the judgment. Can the same' thing be effected by a motion for that purpose supported by affidavit ?”
After a particular examination of the authorities upon this latter point, he concludes : “ These eases in the Federal courts seem to settle that errors in fact may be reached as well by motion as by writ of error coram nobis.” And the court accordingly set aside the execution which had been issued, struck out the judgment, and admitted the defendant to plead.
In Dawson vs. Daniel, 2 Flippin, 301, the court, while not questioning its jurisdiction to strike out a judgment rendered in the Circuit Court for the State of Tennessee, after the expiration of the term, declares that the motion will not prevail unless the defendant can show he was guilty of no negligence, and has a meritorious defence.
The unreported case of Palmer vs. Embry, which has been brought to the attention of the court by the plaintiff’s counsel since the argument, is not in conflict with the decisions we have referred to. This was a suit in equity to-set aside a judgment obtained in Connecticut upon a judg *250 ment recovered in the District of Columbia, and the decision ■of the-Supreme Court refusing the relief was based, as in the cas1 of Bronson vs. Schultzen, upon the laches of the complainant, and not upon any idea of the want of jurisdiction in the United States courts to protect litigants from the fraud or misconduct of other suitors, by striking out a judgment, after the term, on motion.
2d. But even if this jurisdiction did not reside in other courts of the United States, we think it undoubtedly is possessed by the Supreme Court of the District of Columbia. It is true this is a United States court, clothed with all the ordinary jurisdiction of United States circuit and district •courts ; but its power and jurisdiction are far more extensive than that of those courts.
By the act of February 27, 1801, the Circuit Court of the District of Columbia was created with “ all the powers by law vested in the circuit courts and the judges of the circuit . courts of the United States and by the act of April 29, 1802, a district court for this District was created with all the powers and jurisdiction by law vested in the other district courts of the United States. And by various acts of Congress since 1801, further jurisdiction was committed to ■the courts existing within the District of Columbia. But besides this ordinary jurisdiction, the courts of the District are possessed of that large mass of powers which they received under the act of Congress declaring that the laws of the State of Maryland, as they existed in February, 1801 •should continue in force here; which embraced, as decided by the Supreme Court, the common law of England, as then ■existing in Maryland. It was in virtue of this grant that the right of the Circuit Court of the District of Columbia to issue a mandamus was sustained in Kendall’s case, as one oi the powers incident to the highest court of common law juris•diction, though denied to every other circuit court in the United States.
Nor is it the result of this legislation to create, as was argued, effectively two courts, or two separate divisions of •one court ; one clothed with distinct federal jurisdiction, *251 and the other with the common law powers derived from. Maryland. The powers are rherged, and the court acts as a single tribunal with the authority accumulated from these different sources. And we hold it to be perfectly clear, that this court derived from the Maryland law, if it did not possess it in common with the other courts of the United States, entire power to strike out its judgments for proper cause shown, on motion, after the expiration of the term.
That such was the practice of the Maryland courts in February, 1801, cannot be denied. The power was expressly recognized by the act of 1787, c. 9, s. 6, as one previously existing, independently of any statute ; either as a common law power ■ or as inherent in the constitution of courts of. justice. The reported cases where this power has been exercised by the courts of that State are very numerous, and in one of the later cases, Tiernan vs. Hammond, 41 Md., was exercised after eleven years had elapsed from the rendition of the judgment.
It therefore follows, as a necessary consequence, that the same power was possessed by the first circuit court established in the District in 1801; and has devolved upon its successors in turn.
There is abundant evidence at hand that it has been exercised on repeated occasions by our predecessors in this District.
In the case of Sherburne vs. King, 2 Cr. C. C. R., 205, the court reinstated an action of replevin, which had been discontinued at the previous term, because the clerk had omitted to enter the appearance of the defendant’s attorney.
In McCormick’s Lessee vs. Magruder, 2 Cr. C. C., 228, judgment was entered at December Term, 1819, against the casual ejector by default, and a writ of habere issued to April Term, 1821. At this term, Mr. Taney moved to quash the execution and rescind the judgment, upon affidavits that Mr. Marbury had ordered the clerk to enter his appearance before the judgment was entered, but the clerk, by mistake, had entered it in another case, and the court granted the motion, quashed the habere and rescinded the judgment, with leave to the tenant to plead.
*252 In Union Bank of Georgetown vs. Crittenden, 2 Cr. 238, judgment was entered at June Term, 1820, for want of a plea, and at April Term, 1821, Mr. Redin moved to quash the execution and set aside the judgment because the clerk had. omitted to enter an appearance for the defendant^ although directed to do so by an attorney. Mr. Jones resisted the motion and insisted that a court will not correct its judgment after the term ; but the court, nem. eon., granted the motion.
In Ault vs. Elliott, 2 Cr. C. C., 372, a judgment was entered by confession against Morte, at Deeember Term, 1819, without a declaration or rule to declare or plead. At the April Term, 1823, a sci fa. was returned against Elliott, who was special bail for Morte ; and Mr. Redin moved to set aside the original judgment for the irregularities mentioned, and to quash the proceedings against the bail; and the court ordered accordingly at the June Term, 1824, four years and six months after the entry of the judgment.
In Ringgold vs. Elliott, 2 Cr. C. C., 462, judgment was rendered for Ringgold in an action of replevin brought by Patterson at October Term, 1823. Ringgold brought suit against Elliott as surety on the replevin bond, and at April Term, 1824, Elliott moved to set aside the judgment in the replevin suit, because the verdict was rendered in that case at the trial, without a declaration having been filed. The court ordered the judgment to be set aside.
In the same volume, page 682, is to be found the case of Baker vs. Glover. This was a bill in equity brought at the May Term, 1826, by the complainant and another, as garnishees of Smith. It averred that at June Term, 1818, a judgment of condemnation by default was entered against the complainants as garnishees ; that they had failed to appear through ignorance, relying upon the fact that they had no funds of the defendant Smith in their possession ; and that the proceedings were irregular and void for various reasons ; and the bill prayed for an injunction to restrain the levy of an execution issued upon the judgment.
After answer it was contended by Mr. Morfit, upon the *253 argument, that the complainants had. no redress in equity, as they had a full remedy at law by motion to strike out the judgment at law against the garnishees for irregularity and surprise. Mr. F. S. Key, who had filed the bill, thereupon made a motion to quash the execution and set aside the judgment for irregularity : but the case abated before hearing, by the death of the defendant. The report is instructive as showing that Mr. Key made no reply to the argument that, his remedy was at law by motion to strike out the judgment, which, if correct, would have been fatal to his bill, thus conceding the correctness of Mr. Morfit’s position, although nearly eight years had elapsed since the rendition of the judgment of condemnation.
In Reiting v. Bolier, 3 Cranch, 212, at the December Term, 1827, the defendant’s counsel moved to set aside an interlocutory judgment by default and quash a writ of inquiry issued at the preceding term, upon affidavit of merits, &c, The court, upon examination of the cases in the District, including some not referred to by us, granted the motion.
What were the views of the old circuit court on this subject, therefore, admits of no doubt. Nor can there be a question that this court, as now constituted, has repeatedly exercised the same power without question. In the unreported case of Palmer vs. Embry, before referred to, it appears that the judge holding the circuit court struck out a judgment rendered in the course of that litigation, after the term had passed. The Rules Nos. 89 and 90 recognize the motion with reference to the causes specified in the Maryland act of 1787, ch. 9, § 6 ; and evidently refer, as that act did, to motions made after the expiration of the term..
So far, then, from holding that the act of Mr. Justice Mac Arthur in taking jurisdiction of the motion to vacate the judgment, was an usurpation of authority on his part, as asserted in the argument before us, we have no hesitation in declaring that he was exercising a plain power of the court, as undoubtedly belonging to him as any other jurisdiction with which the Supreme Court of this District is endowed.
3d. The next question arises upon the motion of the defendant to dismiss the appeal.
*254 The order below vacated the judgment rendered ex parte,. and awarded a new trial to the defendant upon the merits. Is this an appealable order, within the meaning of the provisions of see. 772 of the Revised Statutes of the District of' Columbia, which declares that “ any party aggrieved by any order, judgment or decree, made or pronounced at any special term, may, if the same involves the merits of the action or proceeding, appeal therefrom to the General Term of the Supreme Court ? ” And this depends upon the fact whether the order of the court below was one ivhich involved the merits of the action or proceeding, within the meaning of the statute.
It is plain that the justice, by passing the order, neither decided that the defendant was entitled to a verdict, nor that the plaintiff had no right to recover upon the merits. His order was predicated of the idea that there had in fact been no real hearing of the case ; and its purpose was to enable the parties to obtain what the law was designed to secure them — a trial upon the merits. The rulings of the court upon questions of law in such a trial, would involve the merits of the action ; but an order that the case should be placed in a position where such rulings might be had, cannot in any just sense be so considered, In loose words, almost any interlocutory order in a case, as for a continuance, a bill of particulars, an amendment of pleadings, a rule security for costs, or an order overruling such motions, may, when tested by the result in the particular case, be said to have-affected the merits; since the subsequent judgment may appear to have been the consequence of the order complained of. But by no just use of language could it be said that the final determination of the case on its merits was involved by such interlocutory order, since the decision upon the merits, by court or jury, would be entirely unaffected by any such antecedent incidental proceedings.
The definition of the word “involve,” which would best support the idea of the appealability of the order, is, “ to-connect by way of natural consequence or effect; ” and this could not be held to embrace an order merely authorizing *255 the parties to present their proofs before a jury which is to render a verdict according to the justice of the case, without knowing, necessarily, that there had ever been a previous ex-parte trial and verdict. It seems a contradiction of terms to declare that an order directing a hearing upon the merits, because the merits had never been heard, is in fact an order involving the merits ; and this view seems to be plainly in conformity with the practice of this court, in kindred cases. Our General Rule, No. 60, contains an enumeration of the grounds upon which a party may move for a new trial; and among them are : 1st. That the party moving for the new trial had no notice, and did not appear at the trial.” 2d. “ Misbehavior of the successful party.” . 6th. “ That the verdict was obtained by surprise.” Each of these grounds is relied upon in the present motion. The rule proceeds : “ These motions are addressed to the discretion of the justice presiding at the trial, and are not appealable'.” Although the rule was designed especially to apply to motions made shortly after the trial, the order before us would seem to be properly within the reason of its sensible provisions.
But apart from this rule, the practice of this court does not support the idea that this is an appealable order.
In Driggs vs. Daniels, 2 Mac A., 255, the plaintiff applied for an order directing the delivery to his solicitor of $25,000 of certificates deposited with the clerk under a stipulation that they should be held subject to claims of creditors for a specified time which had expired. It seems that the creditors had filed their claims in another suit ; but the plaintiff insisted that as they were not filed in the principal case, he was then entitled to the certificate. The court below refused to pass the order, and an appeal was taken, and on motion, was dismissed by the court, which said: “ The order appealed from determines no question involving the merits of the action. The refusal to deliver the certificates is an intermediate proceeding, and its regularity can only come before us on a final judgment or decree.”
In Adams vs. Adams, 2 Mac A., 276 ; the lower court passed an order overruling a motion that a trustee be re *256 quired to give bond and be restrained from selling the trust property without the previous order of the court. An appeal was taken from this order to the General Term. An application was there made to dismiss the appeal for the reason that the order below did not involve merits of the action or proceedings. “ The court was of that opinion and the appeal was accordingly dismissed.”
So in Bryan vs. Sanderson, 3 Mac A., 402, it was decided that no appeal-lies from an order awarding or refusing a writ of assistance. And in Parson vs. Parker, 3 Mac A., 9, a similar ruling was made with respect to orders overruling or sustaining demurrers, with leave to amend or answer over.
The order in each of the cases cited may possibly have proved fatal to the recovery of the party againát whom it was passed, but such would not be its “ natural consequence or effect.” In Parson vs. Parker, Mr. Justice Olin defines the terms employed in section 772, as follows : “An order, judgment or decree involving the merits of a case is therefore such and such only, as, if not set aside or reversed, will put an end to the suit or controversy. To hold the contrary would render every order made either at law or in equity appealable. It is difficult to conceive that any order made in the course of judicial proceedings may not, to some extent, in a greater or less degree, affect the merits of the case.”
That a motion for a new trial, at common law was addressed to the sound discretion of the presiding judge, and was not appealable, has been recognized by this court as a factor in its construction of the law of appeals.
Philips vs. Gardner, 1 Mac A., 165; U. S. vs. Wood, 1 Mac A., 241.
In the Supreme Court, in the case of Connor, alias Van Ness, vs. Peugh’s Lessee, 18 How., 395, a motion was made to dismiss an appeal taken by Mrs. Connor from the refusal of the Circuit Court of the District of Columbia to set aside a judgment at law rendered against her at a previous term, and quash the execution thereon. The motion prevailed, and Mr. Justice Grier, announcing the judgment of the court *257 said : “ The motion afterwards made to have the judgmént •set aside, and for leave to intervene, was an application to the sound discretion of the court. To the action of the court, •on such a motion, no appeal lies, nor is it the subject of a bill of exceptions or writ of error.”
It is worthy of notice that the able counsel in that case, who opposed the motion to strike out the judgment, made no suggestion of any want of jurisdiction in the circuit to pass such an order.
In Wylie vs. Coxe, 15 Howard, 1, an appeal was taken from the refusal of the circuit court of this District, in equity, to open a decree and grant a rehearing. In discussing this appeal, the Chief Justice says : “ In relation to the order, it is plain that no appeal will lie from the refusal of a motion to open the decree and grant a rehearing. The decision of such a motion rests in the sound discretion of the court below, and no appeal will lie from it.”
These decisions are in entire sympathy with numerous cases in the Supreme Court where that tribunal has refused to entertain appeals from orders or decrees which did not u put an end ” to the suit below, and were therefore not final in the sense of the act of 1789 ; and because the passing of the order was within the sound discretion of the court below, and therefore not examinable on appeal.
Thus in Walden vs. Craig, 9 Wheaton, 576, before referred to, after stating that the court below should have granted the motion to amend the judgment, Chief Justice Marshall said : ■“ Hut the course of this court has not been in favor of the idea that a writ of error will lie to the opinion of a circuit court, granting or refusing a motion like this. No judgment in the cause is brought up by the writ, but merely a decision on a collateral motion, which may be renewed. For this reason the writ of error must be dismissed.”
Again, in Doyle vs. Zacharie, 6 Peters, 648, it was held that the refusal of a circuit court of the United States to quash a vend. exp. was no ground for a writ of error to the Supreme Court. The court said : “ We consider all motions of this sort to quash. executions as addressed to the sound *258 discretion of' the court, and as a summary relief which the. court is not compellable to allow.”
In Pickett vs. Legerswood, 7 Peters, 147, a writ of error was brought from the judgment of the Circuit Court for Kentucky, rendered on a writ of error coram oobis, correcting an error in a judgment given at a previous .term of that court.
“ The motion here,” says Mr. Justice Johnson, “ is to quash the writ of error, upon the ground that it is an exercise of jurisdiction in the court below which does not admit of revision in this tribunal, * * * and is therefore subject-to the same exceptions which have always been sustained in this court against revising the interlocutory acts and orders of the inferior courts.”
The court proceeds to state that the writ of error coram nobis is now generally superseded by motion ; that the proceeding, where in force, “ is not one of those remedies over which the supervising power of this court is given by law ; ” and, in conformity with the decision in Walden vs. Craig, declares that the judgment of the court below opening a judgment rendered many years previously, could not be examined, in error, by the Supreme Court. See also Van Ness vs. Van Ness, 6 Howard, 62; Grant vs. Phœnix Ins. Co., 106 U. S., 429.
4th. The order below does not require the continuances to be entered on the docket, as is directed by the act of 1787, ch. 9, sec. 6, and it is insisted that this omission is assignable as error.
The point is immaterial at this stage of the case, but as matter of practice it may be said that- it would be proper such entries should be made on the docket before the case goes to trial again : though the want of the continuances is aided by the appearance of the party. 2 Sellon, 336.
They can perfectly well be made now, and without any injury to the plaintiff. In the two cases in 2d Harr. & Gill,, cited by the plaintiff’s counsel, the court below had ordered the judgments to be stricken out, without directing a new trial to be had, and the plaintiff would therefore have been *259 compelled, in those cases, “ not only to pay the costs of the action, but to begin denovo,” exposed to the chances of a plea of the statute of limitations. Such is not the predicament of the plaintiff here, for the order expressly directs the case to be tried anew.
The appeal is dismissed.