UNITED STATES v. SIXTY-FIVE CASES OF GLOVE LEATHER
(KARPLUS & HERZBERGER, Claimants).

(District Court, N. D. New York.   December 27, 1918.)

1. JUDGMENT ⬅➡299(1)—FINAL JUDGMENT—EXPIRATION OF TERM.
   A District Court loses power over its own final judgments at the close of the term at which rendered, if such term is not continued for the purpose of the particular case.

2. DISMISSAL AND NONSUIT ⬅➡81(3)—"FINAL JUDGMENT"—REINSTATEMENT.
   A docket entry of dismissal, made pursuant to an order of the District Court intended to clear its docket of stale cases, held not a "final judg-

---

ment," depriving the court of power to reinstate the cause, though the term had expired.

[Ed. Note.—For other definitions, see Words and Phrases, Second Series, Final Judgment.]

3. DISMISSAL AND NONSUIT ⊆⇒81(3)—REINSTATING CAUSE—LACHES.

Where, after a docket entry of dismissal was made under a general order, the United States attorney put the case on the calendar at two different terms, and it was postponed at the instance of defendant, or by agreement, *held*, that restoration of the case to the docket cannot be denied, on the theory that the United States was guilty of laches.

At Law. Proceeding by the United States for the forfeiture of Sixty-Five Cases of Glove Leather, claimed by Karplus & Herzberger. Application by the United States to revive and restore to the calendar such cause, opposed by the claimants. Dismissal vacated, and cause restored to docket.

This is an application to revive and restore to the calendar of this court the above-entitled cause, to the end that the prosecution and trial thereof may be proceeded with. The claimants oppose the motion or application mainly on the ground that the case has been dismissed by this court, and that, as the term at which dismissed had passed and ended before the application was made, the court is now without jurisdiction or power to open and restore the case to the calendar, or take any action in the case. Laches is also urged, and it is further claimed that this court never acquired jurisdiction.

D. B. Lucey, U. S. Atty., of Ogdensburg, N. Y.

Brown & Gerry, of New York City (Walter H. Dodd, of New York City, of counsel), for claimants.

RAY, District Judge. In 1912, a special agent of the Treasury Department of the United States actually seized 65 cases of glove leather which had been imported into the United States from Germany on the ground same had been fraudulently undervalued. The goods before such seizure were in the actual possession of one Joseph Bondy at Gloversville, N. Y., in the Northern district, who was the acting agent of Karplus & Herzberger, of Germany, and who were the owners, consignors, and importers.

An agreement was entered into between such importers, represented by Mr. Bondy and the United States, acting through the Treasury Department, by which $6,000 was to be and was deposited by such importers with the collector of customs at Albany, N. Y., Northern district of New York, as representing such goods and in place of same and as representing their maximum value, and which agreement contained the following:

"In event of any judgment of forfeiture or otherwise being obtained, or in event that any liability arising from the importation of said merchandise shall accrue to the United States, in so far as the said sum of $6,000 may be applicable, it shall be applied to the satisfaction in settlement of such liability or judgment."

The United States, acting by the agent of the Treasury, thereupon relinquished and surrendered possession of the said glove leather to

⊆⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

said Bondy, representing Karplus & Herzberger, who disposed of such property. The said $6,000 so deposited was subsequently paid over to the collector of customs in the city of New York and is now in his hands awaiting the final disposition of this case.

On the 16th day of January, 1914, this action was commenced for the forfeiture of such glove leather on the grounds same had been undervalued and a writ was issued. Same was returned with the following return indorsed thereon by the United States marshal:

"Not executed by direction of United States attorney. The claimant has filed a bond for $6,000 to cover any damages which the government might recover, and the defendants' property was returned to them."

The said $6,000 was then in the hands of the United States under the agreement referred to. From November 10, 1914, when issue was joined, until about February, 1918, no further action was taken. In the meantime another case had been pending, involving some of the question involved in this case, and there had been a change in the office of the United States attorney for the Northern district of New York.

On the 14th day of November, 1917, this court, on its own motion, made and entered a general order during the continuance of the October term held at Auburn, N. Y., wherein and whereby it was—

"Ordered, that in all cases at law now pending in the Northern district of New York, or hereafter docketed and pending, and where action is not stayed or enjoined by a court or a judge of competent jurisdiction, in which no action has been or is taken by the attorneys or parties, or either of them, within the two years last past, or following such docketing in cases hereafter docketed, the same be dismissed for want of prosecution, without prejudice, and that the clerk enter in the docket of such cases the words 'Dismissed W. P.,' which shall mean dismissed without prejudice: Provided, however, that on application and motion of either party, and for cause shown, such cause so dismissed may be revived, and its prosecution resumed or continued; and provided, further, that such 'dismissal W. P.' in such cases shall not make the clerk of this court responsible" for certain fees, etc.; "it appearing that such docket fee is not taxable until the case is finally disposed of," etc.

The reason for this order and the action of the clerk under it was to clear the docket of the court of old and stale cases many of which had been settled or otherwise disposed of, but which appeared on the docket of the court to be live cases. It is apparent from the order itself that it was not the purpose to finally dispose of the cases, or to enter any final judgment or order of dismissal, but to leave such cases open to be proceeded with on a proper showing. It is true no provision was inserted in the order continuing the term or terms at or during which such entries on the docket of the court might be made. No formal orders of dismissal were made.

[1, 2] The main question is: Has the court lost jurisdiction and control of such cases, so that it is powerless to proceed with a case, if "on application and motion of either party, and for cause shown," the court sees fit to revive and continue the prosecution of the case as provided in the order itself. The terms of court in the Northern district are fixed by statute, and one term continues until the beginning of another; but the court may and often for certain purposes continues

a term into and even far beyond another and succeeding term. In this case the entry on the docket of the court, "Dismissed W. P.," was made during the October, 1917, term which ended with the beginning of the December, 1917, term. But in January or February, 1918, notice of trial in this case was served, and not returned for the February, 1918, term, and the cause was put over that term by consent, and it was again noticed for the April, 1918, term, and again adjourned to the subsequent or October, 1918, term of this court. The order of this court, above referred to and quoted in part, was not made on notice to parties or their attorneys, and the attorneys for the claimants herein state, what is undoubtedly true, that until during the October, 1918, term they were not aware of such order. It is quite true, I think, that a United States District Court may lose its power over its own "final" judgments at the close of the term at which rendered, if such term is not continued for the purposes of the particular case, or of particular cases including the one in question. In Bronson v. Schulten, 104 U. S. 410, 26 L. Ed. 797, the court said:

"But it is a rule equally well established that after the term has ended all final judgments and decrees of the court pass beyond its control," etc.

In United States v. Mayer, 235 U. S. 55–67, 35 Sup. Ct. 16, 19, 59 L. Ed. 129, the court said:

"In the absence of a statute providing otherwise, the general principle obtains that a court cannot set aside or alter its final judgment after the expiration of the term at which it was entered," etc.

The docket entry of dismissal in the instant case as fully appears by the order pursuant to which made was not a "final" dismissal or judgment or disposition of the case, nor was it intended to be. On the other hand, it was expressly provided in the order that the action might be revived, and its prosecution proceeded with and continued, on application and showing made. The purpose was to clear the docket of stale cases, but not to deprive the parties of the right to be heard and to proceed with their cases, if the court so ordered. The power of the court to deprive the parties of such right may well be questioned. I think it a strained construction to hold that such dismissal was a final judgment in the case, and that such is not the effect of the action taken. The other questions raised on this motion should not be now disposed of, except that of laches.

[3] The record shows, as stated, that after such order was made the United States attorney put the case on the calendar at two different terms, and that the trial was postponed at the instance of the defendant, or, at least, by agreement. The United States was not guilty of laches certainly. The other questions should be raised and presented at the trial. I express no opinion whether or not the court was without jurisdiction by reason of the fact that by agreement of the parties money was substituted for the property itself, and held by the United States in place thereof; the importer, on the faith and basis of the stipulation and substitution, taking and disposing of the property itself.

There will be an order vacating the dismissal and restoring the case to the docket for trial in due course on due notice.