## THE HEWITT (three cases).

(District Court, S. D. New York. September 20, 1926.)

**1. Shipping ⊂⟳209(1)—Claimant in default in limitation proceeding is not entitled to further notice.**

While a claimant in a limitation proceeding may be regarded as a party thereto, his failure to .file an answer to the petition constitutes a default, and he is not thereafter entitled to notice of further steps in the proceeding.

**2. Admiralty ⊂⟳93.**

Power of court to vacate or modify final decree ceases at expiration of 90 days.

**3. Admiralty ⊂⟳94—Libel for review of decree in limitation proceeding cannot raise issues which should have been litigated on petition and answer.**

In the absence of allegation of fraud, issues which should have been litigated on petition and answer in limitation proceeding cannot be raised by a claimant in default by libel for review of final decree.

**4. Admiralty ⊂⟳94.**

Where fraud is alleged a libel for review of an admiralty decree may be maintained after the term at which it was enrolled.

**5. Admiralty ⊂⟳94.**

Showing *held* insufficient to entitle claimants to maintain libels for review of final decree in limitation suit.

In Admiralty. Suits by Rose Joyce Scott, as administratrix of the estates of John Joseph Geary and Edward R. Joyce, respectively, deceased, and by Ernest Nicholas, administrator of the estate of Ernest Nicholas, Jr., against the Union Sulphur Company, owner and claimant of the steamship Hewitt. On exceptions to libels for review of final decree. Exceptions sustained.

Thomas J. Cuff, of New York City, for libelant.

Kirlin, Woolsey, Campbell, Hickox & Keating, of New York City (John M. Woolsey, of New York City, and Frederic R. Sanborn, of Brooklyn, N. Y., of counsel), for respondents.

KNOX, District Judge. This matter comes before the court upon respondent's exceptions to each of the libels, on the alleged ground that none of them states a good cause of action. Each of the above-named libelants filed, on or about May 29, 1926, a libel for review of the final decree entered by this court on February 24, 1925, in admiralty cause No. 83–157, entitled "In the Matter of the Petition of the Union Sulphur Company, Owner of the Steamship Hewitt for Limitation of Liability." Each libel is accompanied by a proposed answer to the petition. The facts are as follows:

On or about January 25, 1921, the Hewitt foundered in the course of a voyage from Sabine, Tex., to Portland, Me., and all hands were lost. The present libelants are representatives of three of the crew. On April 11, 1922, the owner of the Hewitt filed a libel and petition for limitation of its liability. An order for monition, which also restrained the prosecution of suits against petitioner and appointed a commissioner to receive claims, was then made. May 19, 1922, was the return day of the monition, and answers to the petition were then due. On that day the commissioner filed his report on the claims filed. Among them were those of present libelants; but they filed no answers. Emma Inglis, on behalf of herself and other claimants, did so.

In February 1, 1923, a motion was made (not by any of libelants) to set aside the restraining order of April 11, 1922, and to permit the moving party to institute suit for damages in the state courts. On March 6, 1923, one of the judges of this court granted the motion, and entered an order to that effect on March 21. On April 12, petitioner for limitation of liability gave notice of appeal from that order, and filed assignments of error.

At about this time the case of The Edward, 266 U. S. 355, 45 S. Ct. 114, 69 L. Ed. 324, was pending in the Supreme Court. It involved the question as to whether sailor claimants under section 33 of the Merchant Marine Act (Comp. St. § 8337a) were subject to previous provisions of law with respect to limitation of liability proceedings. Pending the decision of that case, the appeal from the court's order of March 21, 1923, was permitted to lie dormant. The Supreme Court made its decision in The Edward suit on December 8, 1924. It held that section 33 of the act, above referred to, did not impliedly repeal the statute regarding limitation of liability of shipowners so far as seamen's personal injury and death claims are concerned. On February 4, 1925, the Circuit Court of Appeals reversed this court's order of March 21, 1923 (4 F.[2d] 1023).

On February 18, 1925, the answer to the original petition for limitation of liability was withdrawn. Settlement had been made with each claimant named therein. The mandate of the Circuit Court of Appeals came down on February 20, 1925, and was made the decree of this court the follow-

ing day. On February 24, 1925, the final decree of limitation, barring all claimants, was obtained ex parte by petitioner for limitation.

[1] While a claimant in a limitation proceeding is probably to be regarded as a party thereto (The Klotawah [D. C.] 210 F. 677), his failure to file an answer to the petition constitutes a default, and he thereby disentitles himself to the service of notice of further steps in the proceeding. The time within which answers and exceptions in admiralty may be filed is governed by admiralty rule No. 13. Its last paragraph is in this language:

"If, on the expiration of the time to answer no pleading or exceptions shall have been filed, the libelant or petitioner may enter an interlocutory or final decree, as may be appropriate, *without notice,* and such decree shall not be set aside except on application to the court and on such terms as the court may impose."

[2] As above shown, answers to the petition for limitation were due upon May 19, 1922. Claimants not having filed answers, and their time to do so not having been extended, they have been in default since that date. They were 'not entitled, therefore, to service of notice of application for a final decree in the limitation proceedings. And, with the expiration of a period of 90 days from the date of entry of the decree, the court's power to modify or vacate the decree ceased. See general rule No. 5 and Bronson v. Schulten, 104 U. S. 410, 26 L. Ed. 797.

But, according to allegations contained in the libels, proctors for these claimants, and proctors for petitioner, had entered into negotiations for the settlement of the claims arising as a result of the deaths of the persons whose estates are respectively represented by libelants. These seem to have continued over a considerable period of time prior to February 24, 1925, and it is quite possible that they were more or less dependent on the outcome of the appeal from the order of March 21, 1923. In any event, they seem to have gone sufficiently far to move an attorney in the office of proctors for petitioner to say, upon February 20, 1925, that he would send proctor for claimants a list of the amounts that had been agreed upon in settlement of other claims. He was told that upon its receipt a revision of the amount of damages asserted by libelants might occur. The list seems never to have been sent. During the time of negotiations,

the offices of both proctors appear to have assumed that, if a settlement were not reached, there would be no difficulty in obtaining an order to open libelants' default in answering the petition.

On July 2, 1925, proctor for present libelants obtained permission to copy certain papers in the proceeding at the office of the proctor for petitioner. No mention was then made of the entry of the final decree. In April of 1926, the proctor for libelants took a proposed answer to the petition, together with certain interrogatories, to proctor for petitioner, and asked that consent be given to open the default. The request was refused, and word was given that a final decree had long since been entered.

While the present libels aver that negotiations for settlement continued subsequent to February 20, 1925, and that libelants were lulled into a false sense of security, there is no recital of the facts that indicates the nature and extent of such alleged deceptive conduct. It is further said that claimants' failure to answer the petition, pending a decision on the appeal from the order of March 6, 1923, was due to an order of the Circuit Court of Appeals which restrained any and all proceedings against petitioner. Granting this to be the fact, it does not account for the default in answering that had existed from May 19, 1922, to the date of the restraint imposed by the appellate court, nor for the delay in filing the present libels.

[3] Additionally, the libels for review aver that the petition for limitation alleged that there were no strippings, wreckage, or proceeds from the Hewitt, and that she had no pending freight; whereas, the true facts were to the contrary. For this reason, it is said that a stipulation for value should have been filed, and that, in its absence, the court was without jurisdiction of the proceedings. Assuming the correctness of the statement, I doubt if the inquiry of the matter may now be made upon a libel for review. The issue was one to be litigated in the limitation proceedings and should have been raised by answers to the petition; and unless that pleading was deliberately false, and was used for the purpose of committing a fraud upon the court, which is not alleged, the question was foreclosed by the final decree.

If libelants have valid claims against the owners of the Hewitt, and are not themselves at fault, it is most regrettable that they are not to have an opportunity to as-

sert them. At the same time, litigation must at some time come to an end, and clients are chargeable with oversights attributable to lawyers whom they select to represent them. The relief now sought is extraordinary in character, but it should not be denied if a case is made out which entitles libelants to its application. It must, however, be borne in mind that only extraordinary reasons will justify extraordinary relief, and that, in cases of this character, the allegations of the libel are examined with great scrutiny.

[4] The mere fact that the term of court at which a final decree was entered has expired does not foreclose the right of a person injured thereby, upon good cause shown, to maintain a libel for review. The Columbia (D. C.) 100 F. 890. In that case, Judge Thomas said that a libel may be filed to review an admiralty decree after the term at which it was enrolled. He used this language:

"It would be an intolerable rule that should disable this court from disturbing upon its own motion, or upon suggestion made to it, a decree obtained fraudulently, by means of its machinery, to effect a tortious purpose. No usual limit of time or other technical limitation should embarrass the court in detecting an offense of that nature, and of suitably correcting its decrees."

To the same effect is the decision in Hall v. Chisholm, 117 F. 807, 55 C. C. A. 31, where a very able Circuit Court of Appeals decided that a libel for review may be entertained after the expiration of the term, where the libelant is shown to be free from fraud or negligence, and the entering of the decree shows such fraud, or its equivalent, upon the rights of libelant, as to require the remedial action of the court, upon principles of justice.

[5] Accepting as facts, as is required upon exceptions, the allegations of the libels in regard to the negotiations for settlement in progress immediately prior to final decree, and suggesting, but not holding, that it would have been a gracious thing for the proctors for Union Sulphur Company to have advised proctor for present libelants, when he represented them in their capacity of claimants, that the answers filed by other persons were about to be withdrawn, I cannot see that failure to do so constituted legal fraud. The justification for this failure to do so was that no obligation rested upon proctors for Union Sulphur Company to impart information which would result in further litigation, and which, if not given, would not violate a duty to claimants, but which might be said by Union Sulphur Company to be a breach of duty owed to it.

But, admitting for argumentative purposes that exceptants' proctors should have been more solicitous than they were for claimants, I doubt if the latter have made out a prima facie case which will permit the libels to stand. First of all, these libels were not filed for more than a year after entry of the final decree. This fact indicates laches probably sufficient, under the cases, to deny relief.

Secondly, the allegations made against proctors for Union Sulphur Company are general in character, and in my opinion do not sufficiently set forth the deceptive facts which are said to have misled proctors for present libelants. There is nothing said in the pleadings to the effect that, in response to inquiry made as to the court status of the proceedings, false information was given; nor does it appear there was any irregularity in the court record that can be said to have been the result of inadvertence or mistake. The whole trouble seems to have arisen from assumptions indulged in by proctor for libelants which, from a legal standpoint, he was not justified in entertaining, and from his failure to keep in touch with what was transpiring in court.

As hereinbefore suggested, the dismissal of the present libels will work a hardship on the persons who bring them. Their claims are doubtless as meritorious as those upon account of which Union Sulphur Company made payments, and it is too bad that libelants cannot be put in the situation of the more fortunate claimants. Were I possessed of a wide discretion in the matter, it would, out of consideration for libelants, be exercised in their favor. But such discretion as exists is limited by prior adjudications, and by what they have declared, and I feel compelled to sustain the exceptions. If, within 30 days, libelants can present a stronger prima facie case than is now shown, they may do so.