## CHARLES McMICKEN, APPELLANT, v. FRANKLIN PERIN.

A purchase of an interest in property by an attorney, made after judgment has been obtained, is not forbidden by the laws of Louisiana.

And where money is borrowed to make the purchase, the lender of the money is estopped from pleading illegality in the purchase, and thus retaining the property which had been conveyed to himself as security for the loan.

In the contract between him and the borrower there was no illegality.

No objections to a master's report can be made which were not taken before the master; nor after a decree pro confesso can a defendant go before the master without a special order, but the accounts are to be taken ex parte.

An appeal will not lie from the refusal of a court to open a former decree; nor have the circuit courts power to set aside their decrees in equity, on motion, after the term at which they were rendered.

18h 507
I.ed 504
22h 285
11wa674
100 527
7f 189
9f 858
11f 462
19f 860
21f 883
133 467
135 224
135 456
43f 551
140 451
141 416
145 173
145 363
48f 261

This 'was an appeal from the circuit court of the United States for the eastern district of Louisiana

The facts in the case are stated in the opinion of the court.

It was argued by *Mr. Henderson*, for the appellant, and *Mr. Smiley*, for the apppellee.

*Mr. Henderson* made the following points:—

1. That the decree validates a void purchase of a litigious right.

2. That the complainant's alleged title was void by the Louisiana statute of champerty.

3. That no loan of money and no resulting trust is shown.

4. There is no express trust in writing shown, though such trust is averred.

5. That the amount admitted by the bill and exhibits to be due to the defendant on the purchase was not allowed him in the decree.

6. That Mary Perin was not made a party to the bill, though her interest in one half of the property in controversy was shown.

Mr. Justice CAMPBELL delivered the opinion of the court.

The appellee (Perin) filed his bill in the circuit court, alleging that he had been employed to institute suits in the courts of Louisiana, on behalf of certain persons claiming to be the heirs of James Fletcher, for which service he was to receive fifty per cent. on the money value, or a fee equal to one half the net value of the property, real or personal, in controversy. Pending the suits his clients offered to sell their interest to him for $5,000, or to other persons for $10,000. There were some negotiations upon this subject, but nothing seems to have been concluded until after the final judgment had been rendered; after that time, the bill proceeds to state as follows:—

"That, upon the said proposition being renewed, the complainant addressed divers letters to the defendant, asking for a loan of $5,000 for the purpose of purchasing the said interest of the Fletchers in and to the said property; and that, in reply to the complainant's said letters, the defendant answered in writing, giving a promise of said loan," as will appear by the exhibits C and D; one of which was written by the defendant on the 8th of September, 1848, nearly three months after the judgment for the land had become final and executory.

"And your orator further shows unto your honors that, relying on the promises and the honesty of the defendant, and upon the understanding and agreement with him, the complainant purchased the said property of the said Fletcher, on

the 19th of October, 1848, while the defendant was absent in Cincinnati; and in order to secure the said McMicken in the loan of the said $5,000, the complainant caused the title of the said property to be made out in the name of the defendant, with the express condition that the purchase was made in the name of the defendant for the use and benefit of the complainant, all of which will appear by reference to the act of sale, marked exhibit F; to the letter of the complainant to the defendant, dated on the 19th of October, 1848, accompanying a copy of the act of sale sent to the defendant, marked exhibit G, and other proofs to be hereafter exhibited. That said defendant accepted the said sale, &c., took the said property, &c., and held the same in trust for the use of complainant, and upon no other condition or understanding, subject only to the repayment of the money advanced for the purchase thereof."

The bill avers that the plaintiff being thus invested with all the legal and equitable rights of the heirs of Fletcher, he tendered to the defendant (McMicken) immediately after his ratification of the sale, the sum of five thousand and fifty dollars, with the proper interest due thereon, and demanded a conveyance of all the said property and rights so purchased and held in trust, which the defendant refused.

The bill charges certain fraudulent pretexts on the part of McMicken for withholding the deed according to his agreement, denies their validity, and affirms that the plaintiff has been forced into a court of chancery in consequence of the repeated refusals of the defendant to deliver up his property and convey the same to him.

The bill prays that the defendant may by the order and decree of the court, be required to convey the said property to the plaintiff upon the payment or tender to the said defendant the amount of his advances, and for general relief.

A decree *pro confesso* was entered at the spring term of the circuit court, 1853, and at the same term of the court in 1854. a decree was rendered requiring the defendant to convey the property specified in the bill to the plaintiff, upon the payment to the said defendant of the debt reported to be due within six months after the date of the decree.

It is objected in this court that the arrangement between the heirs of Fletcher and his attorney, (Perin,) by which the latter became the purchaser of their interest in the subject of the litigation he had been conducting in their behalf, was illegal, and he could take no benefit from his contract. The articles of the code of Louisiana affecting this question are as follows: art. 2623, " a right is said to be litigious whenever there exists a suit and contestation about the same ;" art. 3522, No. 22;
43*

"litigious rights are those which cannot be exercised without undergoing a lawsuit;" art. 2624, "public officers connected with courts of justice, such as judges, advocates, attorneys, clerks, and sheriffs, cannot purchase litigious rights which fall under the jurisdiction of the tribunal in which they exercise their functions, under penalty of nullity and of having to defray all costs, damages, and interest."

The courts of Louisiana have decided " that where a judgment has been rendered litigation has ceased." Marshall *v.* McRae, 2 Ann. 79. And when the thing ceded is not contested and is not the subject of a suit at the time of cession, the thing is not litigious. Provost *v.* Johnson, 9 Mart. 184. The bill charges that the purchase was made after a final judgment had been rendered, declaring the property to belong to the heirs of Fletcher. The subject of the sale was ascertained, the title recognized, and consequently none of the mischiefs which occasioned these articles could then follow. Such is the conclusion of the commentators and courts of France upon the corresponding articles in the code Napoleon. Trop. de Vente, § 201 ; 39 Dall. part 2, 196.

But upon well-established principles the appellant is estopped from contesting the title of the appellee. The case made is that the appellee borrowed of the appellant a sum of money to complete his purchase, and that the title was placed in the name of the appellant to secure the repayment of that advance. The latter cannot be heard to object that there was illegality in the contract between Fletcher's heirs and the appellee, nor to appropriate to himself the fruit of that contract. The contract between the appellee and appellant is uninfected by any illegality.

The consideration was a loan of money upon a security. The contract between Fletcher's heirs and the appellee is completed and closed, and will not be disturbed by any thing which the court may decree in this case. McBlair *v.* Gibbes, 17 How. 232.

The appellant further objects that his debt was not accurately ascertained by the master upon the decree of reference. In Story *v.* Livingston, 13 Pet. 359, this court decided that no objections to a master's report can be made which were not taken before the master ; the object being to save time, and to give him an opportunity to correct his errors and reconsider his opinion. And in Heyn *v.* Heyn, 4 Jacob. 47, it was decided that after a decree *pro confesso*, the defendant is not at liberty to go before the master without a special order, but the accounts are to be taken *ex parte*. This court will not review a master's report upon objections taken here for the first time.

Our conclusion is, there is no error in the final decree, rendered in the circuit court.

At a subsequent term, the appellant filed a petition in the circuit court, alleging that he had been deceived by the appellee in reference to the prosecution of the bill, and had consequently failed to make any appearance or answer, and that he had a meritorious defence.

He prayed the court to set aside the decree, and to allow him to file an answer to the bill. This petition was dismissed. We concur in the judgment of the circuit court as to the propriety of this course. This court, in Brockett v. Brockett, 2 How. 238, determined that an appeal would not lie from the refusal of a court to open a former decree, though the petition in that case was filed during the term at which the decree was entered. In Cameron v. McRoberts, 3 Wheat. 591, it decided that the circuit courts have no power to set aside their decrees in equity on motion after the term at which they were rendered.

These decisions are conclusive of the questions raised upon the order dismissing the petition.

The decrees of the circuit court are affirmed, with costs.