## BRONSON *v.* SCHULTEN.

1. During the term when it is rendered or entered of record, a judgment or an order, however conclusive in its character, is under the control of the court pronouncing it, and may then be set aside, vacated, or modified.

2. After that term, unless steps be taken during its continuance, by motion or otherwise, errors in a final judgment can only be corrected by an appellate court.

3. To this rule there is an exception. The writ of error. *coram vobis* brought before the court of original jurisdiction certain mistakes of fact not put in issue or passed upon, such as that a party died before judgment, or was a married woman, or was an infant—and no guardian appeared or was appointed, or that there was error in the process through the default of the clerk. It did not lie, however, to correct errors in the judgment itself. The relief thereby sought is, in modern practice, attained by motion, supported, when necessary, by affidavits.

4. Neither the practice of the State courts in exercising a control over their own judgments and administering equitable relief in a summary way, nor the statutes of the States, can determine the action of the courts of the United States on this subject.

5. In this case the carelessness and laches of the plaintiffs preclude, under any rule, the setting aside of the judgment after the term at which it was rendered.

ERROR to the Circuit Court of the United States for the Southern District of New York.

The facts are stated in the opinion of the court.

*The Solicitor-General* for the plaintiff in error.

*Mr. Samuel Shellabarger, Mr. Jeremiah M. Wilson,* and *Mr. Almon W. Griswold, contra.*

MR. JUSTICE MILLER delivered the opinion of the court.

On the twenty-sixth day of January, 1877, the following order was made of record in the court below : —

> "J. W. SCHULTEN ET AL.
> *v.*
> GREENE C. BRONSON and 22 other Causes.

"A motion having come on to be heard before this court in the above-entitled causes to open the judgments therein:

"Now, on reading and filing notice of motion dated Dec. 27, 1876, and affidavits annexed of Almon W. Griswold and A. Heydenreich, on the part of the plaintiffs, and Almon W. Griswold having been heard for the motion on the part of the plaintiffs, and George Bliss, Esq., U. S. District Attorney, in opposition thereto, and due deliberation had, it is ordered that the judgments entered in the above-entitled causes upon the verdicts therein be vacated, and that the assessment of the plaintiffs' damages under the verdicts in said causes be referred to John I. Davenport, Esq., as sole referee.

"And it is further ordered that the referee proceed to adjust *de novo* the plaintiffs' damages under said verdicts in accordance therewith, and from the amounts found due, if any, he deduct the sums paid upon the judgment heretofore entered in each of said cases, respectively, and that he report the balance, if any, found due the plaintiffs in each of said cases.

"The said referee shall give notice to the attorneys of the respective parties of the time and place of hearing therein, and either party may, on the hearing, raise objections, and said referee shall decide thereon, and either party may file exceptions to such decision of the referee within two days after the filing of the referee's report, and bring them to a hearing before the court upon four days' notice.

"Dated Jan. 26, 1877."

March 8, 1877, another order was made that the action be continued in the name of Lucretia Bronson, executrix of the

will of Greene C. Bronson, who had died in 1863. March 10, the referee's report was filed, in which it was found that there was due plaintiffs, in addition to what had been paid under the judgment set aside, the sum of $1,205.90, and on this sum interest was allowed to the amount of $2,017.21. For these sums, with added costs, a judgment was rendered in their favor. To reverse this judgment the present writ of error is brought.

Enough of the record of the original suit, the judgment in which is thus set aside, is produced before us to show that the action was against Bronson, as collector of customs for the port of New York, and the claim was for duties in excess of what was authorized by law on a large number of separate importations; that a verdict was given on the trial for plaintiffs for " the amount, with interest, of the difference between duties levied and paid under protest, on commissions at two and one-half per cent, and such duties if levied on commissions at two per cent," on the class of importations in question. The commissions alluded to were those paid by the importers before shipment to this country. As the amount to be recovered under this verdict was matter of computation and inspection of the custom-house papers, it was referred to Samuel Ogden to make report.

Neither the judgment of the court which was set aside, nor the report of Ogden, on which that judgment must have been entered, nor the plaintiffs' bill of particulars, on which the action was based, is found in the transcript of the record, on which we are to consider this case. Nor is there any bill of exceptions, as there should have been, embodying the evidence on which the court acted in setting aside the former judgment. Nor is the date of that judgment to be ascertained from anything in this record, unless we can look at certain affidavits found in the transcript; for neither the notice of the motion to set it aside nor the order granting that motion mention the date of that judgment. It would seem that a party seeking to open or set aside a judgment seventeen years after it had been entered and the amount of it paid, in order that another judgment for a larger amount might be rendered in the same suit, was not very anxious to call attention to dates.

This imperfect state of the record has made us hesitate to

enter upon a review of the case, but as the order setting aside
the original judgment refers to the notice of motion and the
annexed affidavits as the foundation of that order, and identi-
fies those papers as they are found in the transcript, we are
of opinion that they may be considered as part of the record,
so far as the question of the authority of the court to make
that order is involved.

Looking to these affidavits, in connection with what is
more strictly a part of the record, it appears that the original
suit was commenced in one of the State courts, Sept. 2, 1858,
and afterwards removed into the Circuit Court of the United
States, where plaintiffs filed a declaration containing the
common counts. It appears that they also served a bill of par-
ticulars, setting out seventy-four entries of goods at the custom-
house, on which they had been charged excessive duties by the
defendant Bronson, which they had paid under protest. The
affidavit of Murray, a refund clerk in the custom-house, states
that in thirty-four of these entries the sums which should have
been allowed plaintiffs were omitted in the adjustment. It was
on this statement that the judgment rendered on the report of
the first referee, Ogden, without objection or exception on
either side, on the fifth day of August, 1860, was set aside,
and a new reference made. This judgment, it appears, was
also paid and accepted by plaintiffs in a few days, we may sup-
pose, after it was rendered. The affidavit of plaintiffs' attor-
ney, who attended to the original action, and on whose motion
the original judgment was set aside, states that the adjustments
were made by Ogden, who was an auditor at the custom-house,
and by the collector of customs, and by the clerk of the court;
that in 1864 he discovered that certain errors had been com-
mitted in fourteen other cases of a similar character, in which
other persons were plaintiffs, to their prejudice, for which new
actions were commenced, and held barred by the Statute of
Limitations; that as to other cases, including the one now be-
fore us, he did not discover that items embraced in the bill of
particulars had been omitted, until an investigation of certain
recent cases of like character against Collector Redfield; that
in the readjustment of these latter cases his attention was
turned to the source of the errors in the one now in question.

The affidavits of Heinrich and Murray tend to show that all was not included in the adjustment under the verdict that ought to have been.

We have thus a case in which plaintiffs sue for excessive charges on account of these commissions paid on seventy-four entries of goods, specifically set out in their bill of particulars. A verdict is rendered in their favor fixing the precise error under which the exessive duty had been exacted, and leaving to a referee to ascertain the amount due on each of these entries. The referee reports as to all but thirty-four, nearly half, of these entries, and as to them makes no report. A judgment is rendered in conformity to the report, the money paid and accepted, and seventeen years afterwards the judgment is opened to correct the omission of these thirty-four entries.

We are of opinion that, if there was any mistake in the report of the referee and in the judgment rendered thereon, it was so clearly due to the negligence and inattention of plaintiffs or their attorney, that no case is made for relief in any of the modes known to the law, of correcting an erroneous judgment after the term at which it was rendered.

Stress is laid upon the fact in argument that the referee was one of the clerks in the custom-house, who had access to all the books and papers of the office. It is probable he was selected by both parties because of his familiarity with those accounts, but he is not mentioned in the order of reference as such clerk or officer. Any other person so appointed would have been permitted to examine the necessary books and papers, and in this matter he must be held to be, as no doubt he was, an impartial referee, representing neither the collector nor the government which was to pay the sum found due.

The plaintiffs had the same right to appear before him, examine his report and the evidence on which it was founded, to take and urge to the court exceptions to it, as in case of any other reference. Nothing of the kind was done, and though it is here said that no report at all was made as to thirty-four out of seventy-four entries set out in plaintiffs' bill of particulars, no exception was made to the report on that ground, nor any inquiry made as to the reason for such omission. It is

obvious that if this had been done, the error which is now complained of would have been corrected before the report of the referee was confirmed and judgment rendered on it.

If, then, there was no question of lapse of time, or of the power of the court over its own judgments after the term at which they are rendered, and if this were a bill in chancery to set aside this judgment on the ground of mistake, it is clear that no relief could be granted, because of the negligence, carelessness, and inattention and laches of the plaintiffs, or of their attorney, in the matter.

Does the power of the court over its own judgment, exercised in a summary manner on motion, after the term at which it was rendered, extend beyond this?

In this country all courts have terms and vacations. The time of the commencement of every term, if there be half a dozen a year, is fixed by statute, and the end of it by the final adjournment of the court for that term. This is the case with regard to all the courts of the United States, and if there be exceptions in the State courts, they are unimportant. It is a general rule of the law that all the judgments, decrees, or other orders of the courts, however conclusive in their character, are under the control of the court which pronounces them during the term at which they are rendered or entered of record, and they may then be set aside, vacated, modified, or annulled by that court.

But it is a rule equally well established, that after the term has ended all final judgments and decrees of the court pass beyond its control, unless steps be taken during that term, by motion or otherwise, to set aside, modify, or correct them; and if errors exist, they can only be corrected by such proceeding by a writ of error or appeal as may be allowed in a court which, by law, can review the decision. So strongly has this principle been upheld by this court, that while realizing that there is no court which can review its decisions, it has invariably refused all applications for rehearing made after the adjournment of the court for the term at which the judgment was rendered. And this is placed upon the ground that the case has passed beyond the control of the court. *Brooks* v. *Railroad Company*, 102 U. S. 107; *Public Schools* v. *Walker*,

9 Wall. 603; *Brown* v. *Aspden*, 14 How. 25; *Cameron* v. *Mc-Roberts*, 3 Wheat. 591; *Sibbald* v. *United States*, 12 Pet. 488; *United States* v. *The Brig Glamorgan*, 2 Curt. C. C. 236; *Bradford* v. *Patterson*, 1 A. K. Marsh. (Ky.) 464; *Ballard* v. *Davis*, 3 J. J. Marsh. (Ky.) 656.

But to this general rule an exception has crept into practice in a large number of the State courts in a class of cases not well defined, and about which and about the limit of this exception these courts are much at variance. An attempt to reconcile them would be entirely futile. The exception, however, has its foundation in the English writ of error *coram vobis*, a writ which was allowed to bring before the same court in which the error was committed some matter of fact which had escaped attention, and which was material in the proceeding. These were limited generally to the facts that one of the parties to the judgment had died before it was rendered, or was an infant and no guardian had appeared or been appointed, or was a *feme covert* and the like, or error in the process through default of the clerk. See Archbold's Practice.

In Rolle's Abridgment, p. 749, it is said that if the error be in the judgment itself, a writ of error does not lie in the same, but in another and superior court.

In *Pickett's Heirs* v. *Legerwood* (7 Pet. 144), this court said that the same end sought by that writ is now in practice generally attained by motion, sustained, if the court require it, by affidavits; and it was added, this latter mode had so far superseded the former in the British practice, that Blackstone did not even notice the writ as a remedy.

It is quite clear upon the examination of many cases of the exercise of this writ of error *coram vobis* found in the reported cases in this country, and as defined in the case in this court above mentioned, and in England, that it does not reach to facts submitted to a jury, or found by a referee, or by the court sitting to try the issues; and therefore it does not include the present case.

There has grown up, however, in the courts of law a tendency to apply to this control over their own judgments some of the principles of the courts of equity in cases which go a little further in administering summary relief than the old-

fashioned writ of error *coram vobis* did.   This practice has
been founded in the courts of many of the States on statutes
which conferred a prescribed and limited control over the judg-
ment of a court after the expiration of the term at which it
was rendered.   In other cases the summary remedy by motion
has been granted as founded in the inherent power of the
court over its own judgments, and to avoid the expense and
delay of a formal suit in chancery.  It can easily be seen how
this practice is justified in courts of the States where a system
has been adopted which amalgamates the equitable and com-
mon-law jurisdiction in one form of action, as most of the rules
of procedure do.

It is a profitless task to follow the research of counsel for
the defendants in error through the numerous decisions of the
State courts cited by them on this point in support of the
action of the Circuit Court.  The cases from the New York
courts, which go farthest in that direction, are largely founded
on the statute of that State, and we are of opinion that on this
point neither the statute of that State nor the decisions of its
courts are binding on the courts of the United States held
there.

The question relates to the *power* of the courts and not to
the mode of procedure.   It is whether there exists in the court
the authority to set aside, vacate, and modify its final judg-
ments after the term at which they were rendered; and this
authority can neither be conferred upon nor withheld from the
courts of the United States by the statutes of a State or the
practice of its courts.

We are also of opinion that the general current of authority
in the courts of this country fixes the line beyond which they
cannot go in setting aside their final judgments and decrees, on
motion made after the term at which they were rendered, far
within the case made out here. If it is an equitable power sup-
posed to be here exercised, we have shown that a court of
equity, on the most formal proceeding, taken in due time, could
not, according to its established principles, have granted the
relief which was given in this case. .

It is also one of the principles of equity most frequently
relied upon that the party seeking relief in a case like this

must use due diligence in asserting his rights, and that negligence and laches in that regard are equally effectual bars to relief.

As we have already seen, nothing hindered the plaintiffs from discovering the mistake of which they complain for seventeen years but the most careless inattention to the proceeding in which they had claimed these rights and had them adjudicated.

There was here an acquiescence for that length of time in the correctness of a judgment which had been paid to them, when the error, if any existed, only needed a comparison of their own bill of particulars with the report of the referee, to be seen, or at least to be suggested. Having been negligent originally, and having slept on their rights for many years, they show no right, under any sound practice of the control of courts over their own judgments, to have that in this case set aside.

It follows that the judgment of the Circuit Court must be reversed, with directions that the order vacating the former judgment be set aside, and the motion of plaintiffs in that matter be overruled.

*So ordered.*

NOTE. — *Bronson* v. *Loeschigk, Bronson* v. *Warburg, Bronson* v. *Grossman, Redfield* v. *La Chaise,* and *Redfield* v. *Mitchell* were brought by writ of error to the same court and argued at the same time as was the preceding case.

MR. JUSTICE MILLER, in giving the opinion of the court, stated that they were governed by the principles announced in that case, and that in each a judgment would be entered reversing that of the Circuit Court, with directions to set aside the order vacating the original judgment, and to overrule the motion on which that order was made.