### COLEMAN, Assignee, etc., *v.* NEILL.

(*District Court, W. D. Pennsylvania.* March, 1882.)

PRACTICE IN EQUITY—AMENDMENT OF FINAL DECREE.

> After the lapse of more than four years an amicable final decree in equity, in a suit between an assignee in bankruptcy and an assignee under a deed of voluntary assignment, which left the latter liable to account to the creditors of the assignor in a state court for the portion of the assets he had collected, will not be amended upon his petition, on the ground of an alleged mistake in its terms, although the assignee in bankruptcy consents, where the amendment would prejudice the creditors, and they object to its allowance.

In Equity. Petition to amend decree.

This case was upon a petition to amend the final decree entered in the suit October 18, 1877.

*Roger Sherman,* for assignee in bankruptcy.

*I. B. Brawley* and *Neill & Heywang,* for assignee under the state laws. All these for rule.

*Guthrie & Byles* and *J. J. Henderson,* for creditors. Against the rule.

ACHESON, D. J. If the decree of October 18, 1877, is in anywise anomalous, the explanation is to be found in the fact that it was made by consent, and at the instance of all the parties then before the court. The original decree, which that of October 18, 1877, superseded, was quite different, and was open to no such criticism. After the lapse of more than four years the defendant has applied to the court by petition, asking that the decree of October 18, 1877, be essentially modified, for the correction of an alleged mistake in its terms. Moses J. Coleman has filed his assent; and, if he and the defendant were alone interested, there would be no reason to deny the application. But the fact is that the amendment sought will seriously affect certain creditors of the bankrupt copartnership, the Titusville Savings Bank, and is intended so to operate. These creditors are before the court by their counsel protesting against the allowance of the amendment, and the real question is whether as against them the decree should be modified. Claiming that they are entitled to *pro rata* shares of the assets which the defendant "collected and converted into money in his capacity of assignee of said copartnership under state law," and which were excepted out of the operation of the decree, these creditors are pursuing their remedy in the state court. As to them, therefore, the present application must be considered as adverse.

The decree, I think, is not interlocutory, as argued, but final. And treating the present application (as we must) as adverse to the objecting creditors, it seems to me to have been made too late. *Cameron* v. *McRoberts*, 3 Wheat. 591; *McMicken* v. *Perin*, 18 How. 507; U. S. Equity Rules 85 and 88. But if this difficulty were out of the way, and the application could be considered simply upon its merits, it is by no means clear upon the evidence now submitted, accepting it as true, that any amendable mistake was made. The decree, it appears, was drawn by the defendant's own counsel; and, perhaps, the most that can be said is that the parties seem to have been under an erroneous impression as to its legal effect. However it may have been with the parties themselves, it would be very unsafe to infer from the evidence that Judge Ketcham intended to approve anything different from what is expressed in the decree. The presumption is altogether the other way.

I may add that the parties would seem to have been acting under a great misapprehension as to the value of the assets which the decree turned over to the assignee in bankruptcy. If those assets had been actually worth anything like their nominal value a distribution of them might have been made—certainly would have been decreed—upon such equitable principles as to equalize the creditors, and thus save Mr. Neill from the consequences of any unequal distribution he may have made. But if this desirable result has been defeated by reason of the worthlessness of those assets, it is Mr. Neill's misfortune. Surely these innocent creditors are not to suffer. It cannot be supposed that this court intended to sanction any agreement between the assignee under the deed of voluntary assignment and the assignee in bankruptcy prejudicial to the rights of creditors of the Titusville Savings Bank. These parties were acting respectively in a fiduciary capacity, and were not at liberty to enter into any arrangement between themselves hurtful to the creditors they represented, and a court of equity would not wittingly adopt an amicable decree embodying such a settlement.

After the most serious consideration of the case, the court is constrained to deny the petition to amend the decree. The creditors had a right to rely on the decree as made, and justice to them forbids that it should be disturbed at this late day.

And now, March 16, 1882, the prayer of said petition is denied, and the rule to show cause, etc., discharged.