135 U.S. 207 (1890)
CENTRAL TRUST COMPANY
v.
GRANT LOCOMOTIVE WORKS.
DAYTON, FORT WAYNE AND CHICAGO RAILROAD COMPANY
v.
GRANT LOCOMOTIVE WORKS.
CENTRAL TRUST COMPANY
v.
GRANT.
DAYTON, FORT WAYNE AND CHICAGO RAILROAD COMPANY
v.
GRANT.
CENTRAL TRUST COMPANY
v.
GRANT LOCOMOTIVE WORKS.
CENTRAL TRUST COMPANY
v.
GRANT.
Nos. 1277, 1278, 1279, 1280, 1281, 1282.
Supreme Court of United States.
Submitted March 31, 1890.
Decided April 21, 1890.
APPEALS FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE SOUTHERN DISTRICT OF OHIO.
*221 Mr. B.H. Bristow, Mr. Bluford Wilson and Mr. W.S. Opdyke in support of the motions to dismiss or affirm.
Mr. Edward Colston and Mr. George Hoadly, Jr., opposing.
MR. CHIEF JUSTICE FULLER delivered the opinion of the Court.
The appeals in 1277, 1278, 1279 and 1280 were taken from the orders of January 28, 1889, requiring payment for the use of the Grant Locomotive Works, and R.S. Grant, of the amounts decreed December 22, 1883, (less what had been received in the intermediate period,) and in execution of said decrees, from the purchasers of the Southeastern Division, and from the purchasers of the Cincinnati Northern Division, of the Toledo, Cincinnati and St. Louis Railroad Company. *222 These purchasers bought subject to the provisions of the decrees, the terms of sale, and the orders confirming the sales, which were the source of their title, and which provided for the payment down of a specified sum in cash, and of such further portions of their bid in cash as might be necessary in order to meet such other claims as the court might adjudge to be prior in equity to the mortgages, with the reservation of a right of resale in case of default in this particular; and the right, title and interest they acquired was expressly made subject to these provisions. Costs, fees and expenses of sale, receiver's expenses and indebtedness, and claims awarded priority, were to be first paid. The balance of their bid they could pay in cash or in first mortgage bonds. That bid, in the instance of the Southeastern Division, was $500,000, and the purchasers were not required by the orders in question to pay any amount in excess thereof. Neither the purchasers of the Cincinnati Northern Division, nor their assignee, the Cincinnati, Lebanon and Northern Railway Company, took any appeal.
It does not appear to us that the Dayton, Fort Wayne and Chicago Railroad Company, the assignee of the purchasers of the Southeastern Division, has an appealable interest in the premises.
The purchasers were bound to pay such portions of their bid in cash as the court might direct, to meet other claims, and whether the payments of their bids were to be made for the benefit of the bondholders, or partly for the bondholders and partly for the benefit of the appellees, it is clear that they, as purchasers, and the railroad company, as their assignee, had no interest in the matters affected by the decrees appealed from.
In Swann v. Wright's Executor, 110 U.S. 590, 601, Swann had purchased the railroad under a decree, which provided that the sale should be subject to the liens already established, or which might be established on references then pending, as prior and superior to the lien of the mortgage, and the claim of Wright was one of this class. It was pending before the master and reported on after the sale, when the purchaser applied to oppose its confirmation, and was not allowed to do so; and the sale was afterwards confirmed, expressly subject *223 to all liens established as specified in the decree of sale. Swann afterwards filed a bill to set aside Wright's claim, for fraud in its inception, which was dismissed, and the dismissal affirmed on the ground that the property was purchased expressly subject to all established claims, or claims that might be established on references then pending, which included Wright's. "If the court," observed Mr. Justice Harlan, delivering the opinion, "had in the decree of sale reserved to the purchaser, although not a party to the proceedings, the right to appear and contest any alleged liens then under examination, and, therefore, not established by the court, an entirely different question would have been presented. But no such reservation was made; and the purchaser was required, without qualification, to take the property, upon confirmation of the sale, subject to the liens already established, or which might, on pending references, be established as prior and superior to the liens of the first mortgage bondholders... . All that we decide is, that in view of the express terms of the decree of sale, and since neither the purchaser nor his grantee proposes to surrender the property to be resold for the benefit of those concerned, such purchaser has no standing in court for the purpose of re-litigating the liens expressly subject to which he bought and took title."
In Stuart v. Gay, 127 U.S. 518, under a decree for the foreclosure of certain liens, which contemplated the payment of the purchase money, on the sale, in money, in annual instalments, Stuart purchased, and by a subsequent order was allowed to be credited on unpaid purchase money with various liens he had acquired. From a later order in respect to allowances of interest upon certain prior liens he appealed to this court, and it was held that he had no appealable interest, as a purchaser of the property, because it was a matter of indifference to him as such how the proceeds of the sale should be distributed among the creditors.
It is argued, however, that the purchase of the Southeastern Division was not made subject to the decrees of December 22, 1883, because it is said that at the time of the purchase "these decrees were dead and thought to be beyond *224 resurrection;" and "that a purchaser buying under such circumstances ought to have the right to resist their reappearance." This would hardly be contended if the orders of April 10, 1884, were void for want of jurisdiction to enter them. Those orders were not made upon a bill of review or a bill in that nature, nor upon any petition for rehearing, which under equity rule 88 could not then have been filed if the decrees of December 22, 1883, were final and appealable. On March 15, 1884, the Central Trust Company filed certain petitions which it asked might be treated as petitions for rehearing or in review, but the court made no order in regard to them, and did not predicate its action upon them. On the contrary, it was specifically set forth that the orders of December 22, 1883, were annulled and set aside "by the court of its own motion."
If these orders were final decrees, the court could not vacate them of its own motion after the close of the October Term, 1883. McMicken v. Perin, 18 How. 507, 511. We think they were final. They determined the ownership of the locomotives and the right to their possession; that they were essential to the operation of the roads by the receiver, and should be purchased by him; that certain designated amounts should be paid for the rentals and the purchase price, which amounts were made a charge upon the earnings, income and property of the Toledo, Cincinnati and St. Louis Railroad Company, and especially of the particular divisions named; and that the amounts should be paid by the receiver, and any balance remaining unpaid at the date of the foreclosure and sale of the railroad, or the particular division, should be a first lien thereon and the sale be made subject thereto. They were, therefore, final in their nature, and made upon matters distinct from the general subject of litigation, the foreclosure of the mortgages.
In Trustees v. Greenough, 105 U.S. 527, an appeal from an order for the allowance of costs and expenses to a complainant, suing on behalf of a trust fund, was sustained. In Hinckley v. Gilman, Clinton & Springfield Railroad Company, 94 U.S. 467, a receiver was allowed to appeal from a decree against him to pay a sum of money in the cause in which he was appointed. In Williams v. Morgan, 111 U.S. 684, a decree *225 in a foreclosure suit, fixing the compensation to be paid to the trustees under a mortgage from the fund realized from the sale, was held to be a final decree as to that matter; and in Fosdick v. Schall, 99 U.S. 235, a decree upon an intervening petition in respect to certain cars used by a railroad company under a contract with the manufacturer was so treated. There was a fund in court in that case, but in principle the orders here are the same. And see Farmers' Loan & Trust Co., Petitioner, 129 U.S. 206, 213.
The decrees of June 11, 1887, were clearly right in adjudicating the orders of April 10, 1884, to be of no effect, and reinstating the prior decrees.
Even if the orders of April 10, 1884, were voidable merely, the purchasers should have made the defence now suggested, of reliance upon them, when the application was made which resulted in the decrees of June 11, 1887. They did indeed appear and file a demurrer, but they made no resistance upon the merits, and they certainly prayed no appeal from the decrees then entered.
The result is that the appeals of the Dayton, Fort Wayne and Chicago Railroad Company, Nos. 1278 and 1280, must be dismissed.
Turning to the appeals of the Central Trust Company, it is strenuously argued, in support of the motions to dismiss, that as the decrees of January 28, 1889, affected the purchasers only, the bondholders as such had no further interest in the litigation, nor had their representative, the Trust Company; that at least the record does not definitely show that either the Trust Company or the railroad company had certainly an interest; that though one or the other may have had, it is not sufficiently clear which it is; and that, therefore, the appeals of both must be dismissed. It is enough that sufficient color is given to the motions to enable us to pass upon the motions to affirm.
The orders of January 28, 1889, which are alone appealed from, were merely in execution of the former decrees, and as such we do not find that any error supervened in their rendition. The amounts named were not disputed and could not *226 have been, except in respect to credits, as to which there was no controversy, inasmuch as those amounts had been previously determined, and their payment decreed; and the resale had been expressly provided for in the foreclosure decrees and the order of confirmation.
The action of the Circuit Court in refusing to allow the Trust Company to amend and supplement its petitions of March 15, 1884, and file them as original bills of review as of that date, and in denying the application of the Dayton, Fort Wayne and Chicago Railroad Company to intervene and file a petition in the cases in review of the orders of December 22, 1883, was taken in the exercise of a discretion with which we are not justified in interfering. Buffington v. Harvey, 95 U.S. 99; Brockett v. Brockett, 2 How. 238; Mellen v. Moline Iron Works, 131 U.S. 352.
No appeal having been prosecuted from the orders of December 22, 1883, or those of June 11, 1887, and the appeals from the orders of January 28, 1889, only, not bringing the former orders before us for revision, we are constrained to sustain the motions to affirm in Nos. 1277 and 1279, without entering upon the consideration of the errors so earnestly urged as existing in the December decrees.
It remains to dispose of the motions in Nos. 1281 and 1282. These are appeals from orders of the Circuit Court striking from the files two bills placed there on the 28th of January, 1889, by the Central Trust Company, to review the decrees of December 22, 1883, for errors apparent.
Reference is made to the records in the cases 3554 and 3578, and we do appellant no injustice in assuming that these bills, verified January 10, 1889, are the same presented to the Circuit Court when application was made in those cases for leave to amend and supplement appellant's petitions of March 15, 1884, and docket the same as bills of review of that date. That application having been denied, appellant put these papers on file as the court was entering the other orders. Here again, while the motions to dismiss will not be sustained, we hold there was color for them.
The bills are not based upon new matter or newly discovered *227 evidence, and no leave was given to file them. They are clearly bills for the review of the orders of December 22, 1883, for errors apparent of record. Such bills must ordinarily be brought within the time limited by statute for taking an appeal from the decree sought to be reviewed. Thomas v. Harvie's Heirs, 10 Wheat. 146; Ensminger v. Powers, 108 U.S. 292, 302. Over five years had elapsed, but it is insisted that the time between the 10th of April, 1884, and the 11th of June, 1887, when the orders of April 10, 1884, were declared void, ought not to be considered in passing upon this question, because of appellant's belief in the validity of and reliance upon those orders and the acquiescence of appellees therein.
It seems to us that appellant was not justified in such belief and reliance, and that, at all events, after the orders of June 11, 1887, it should have moved promptly by way of appeal or bill of review. These bills attack the orders of December 22, 1883, merely, and not the decrees of June 11, 1887, reinstating the former as in full force and effect.
The rule laid down in Thomas v. Harvie's Heirs is based upon the principle of discountenancing laches and neglect. Under all the circumstances, we cannot concede that appellant acted in apt time, and must therefore affirm the orders of the Circuit Court striking the bills from the files.
The appeals in Nos. 1278 and 1280 are dismissed and the decrees in Nos. 1277, 1279, 1281 and 1282 are affirmed.