## HOME ST. RY. CO. et al. v. CITY OF LINCOLN.

(Circuit Court of Appeals, Eighth Circuit.   May 29, 1908.)

### No. 2,573.

1. EQUITY—DECREE—ESTOPPEL TO REVIEW.

   A complainant who causes a decree in his favor to be executed according to a possible interpretation of it, accepts the benefits thereof, and acquiesces therein for six years, disentitles himself to call in question the correctness of the decree or the interpretation so put upon it.

2. SAME—CORRECTION AFTER TERM.

   A Circuit Court of the United States is without authority to correct a judicial error in one of its decrees upon simple motion or petition after the term at which the decree was entered.

   [Ed. Note.—For cases in point, see Cent. Dig. vol. 19, Equity, § 1025.]

3. SAME—BILL OF REVIEW—TIME FOR BRINGING.

   A bill of review for error of law apparent on the face of the record may be brought after the term at which the decree sought to be corrected was entered, but not after the time allowed by statute for taking an appeal therefrom.

   [Ed. Note.—For cases in point, see Cent. Dig. vol. 19, Equity, §§ 1101–1106.]

4. SAME—BILL OF REVIEW—PROCESS.

   A bill of review is not considered as a continuance of the former bill, but as in the nature of an original bill, and an appearance thereto is enforced in the same manner as to an original bill.

5. SAME—MODIFICATION UPON BILL OF REVIEW WITHOUT ISSUANCE OF PROCESS OR APPEARANCE OF DEFENDANTS IS VOID.

   Where no process is issued on a bill of review, and the defendants do not waive process by appearance or otherwise, a decree rendered thereon, which so alters the decree sought to be corrected as to give it an effect against the defendants which it did not have before, is wholly unauthorized and void.

(Syllabus by the Court.)

Appeal from the Circuit Court of the United States for the District of Nebraska.

Charles S. Allen (Paul F. Clark, on the brief), for appellants.

Roscoe Pound (F. M. Hall and F. H. Woods, on the brief), for appellee.

Before VAN DEVANTER and ADAMS, Circuit Judges, and RINER, District Judge.

VAN DEVANTER, Circuit Judge. This is an appeal from an order confirming a sale made under what is styled in the record a "supplemental foreclosure decree." The objection made to confirming the sale was that the supplemental decree was wholly unauthorized and void, in the circumstances in which it was rendered. The facts necessary to an understanding of the question so presented are these: On October 11, 1893, in a suit then pending in the Circuit Court of the United States for the District of Nebraska, the purpose of which was to foreclose a mortgage given by the Home Street Railway Company, a Nebraska corporation, to the Fidelity Loan & Trust Company, an Iowa corporation, as trustee for the holders of certain bonds, William G. Clark was appointed receiver of the mortgaged property, consisting of certain street railway properties, rights, and franchises in the city of Lincoln, Neb., some or all of which had been acquired by the mortgagor from former corporate owners. After the receiver had qualified and had taken possession, the city of Lincoln by leave of the court filed in the suit its petition of intervention, wherein it asserted a prior lien upon all of the mortgaged property, rights, and franchises, by reason of special paving taxes theretofore levied against the same while it was in the hands of the former owners, and sought to enforce the lien by a foreclosure and sale. The petition particularly enumerated the tracks or lines of road then constructed, and the connection in which the words "rights" and "franchises" were used therein indicated that the lien asserted and the relief sought were intended to embrace the right and franchise of the railway company to construct and operate other tracks and lines of road in other parts of the city. The lien was asserted under a provision in the act of March 25, 1887 (Laws Neb. 1887, p. 271, c. 11, § 77), which reads as follows:

"Special taxes for the purpose of paying the costs of any such paving, repaving, macadamizing, or repairing of any such street railway may be levied upon the track including the ties, iron, roadbed and right of way, side tracks and appurtenances, including buildings, and real estate belonging to any such company or person, and used for the purpose of such street railway business, all as one property, or upon such part of such tracks, appurtenances, and property as may be within the district paved, repaved, macadamized, or repaired, or any part thereof, and shall be a lien until satisfied."

On May 19, 1899, a decree was rendered upon the petition of intervention declaring the special taxes, which then amounted, with penalty and interest, to $46,015.68, a prior lien upon "all the property and franchises of the defendant Home Street Railway Company, as one entire property," and ordering, unless the amount so ascertained, with interest and costs, should be paid within 20 days, that "all and singular

the properties, rights of defendant Home Street Railway Company, mentioned in the bill and cross-bill of complaint (petition of intervention) in this cause, and hereinafter described, or as much thereof as may be sufficient," be sold; that the master execute to the purchaser a deed "of said properties, rights, and franchises"; and that the purchaser "of said properties, rights, and franchises" be put in possession thereof. The decree then proceeded:

"The description, extent, location and particular boundaries of the property authorized to be sold under and by virtue of this decree, so far as the same can be ascertained from the cross-bill (petition of intervention), bill, and inventory of property in hands of the receiver of the court, herein filed, are as follows: 'The track, ties, iron, roadbed, and right of way' along certain designated streets, being the constructed tracks or lines of road, 'and all other property, of whatever kind, whether particularly described or not and whereever situated, belonging to said defendant Home Street Railway Company, part of or belonging to its street railway or part of its equipment.'"

As is said in the brief of the appellee, "this portion of the decree omits all reference to the franchises." Pursuant to this decree a sale was had of the property so authorized to be sold, the city being the purchaser, and on October 25, 1899, an order was entered confirming the sale and ascertaining that there was a balance of $41,046.83 due to the city. On November 20, 1905, more than six years after the proceedings just recited, the city filed in the cause a so-called supplemental bill, wherein, in addition to reciting the prior proceedings, it was said of the original decree of May 19, 1899:

"That while the said city of Lincoln under and by virtue of the terms of said decree was given a first and prior lien upon all of the property, rights, right of way, franchise, and franchises of the Home Street Railway Company, as one entire property, yet, when said decree came to providing what property should be sold, it only provided for the sale of the right of way, franchise, and franchises in and to certain designated streets, on which said defendant had constructed a street railway, and did not authorize and direct the sale of all the property of every description and kind, including the right of way, franchise, and franchises in and to the streets on which no road had been constructed, but limited the right of way and franchise to the streets on and along which track had been laid, and a street railway had been built or constructed; whereas said decree should have provided for the sale of all the track, ties, iron, roadbed, together with all the right of way, franchise, and franchises, that the Home Street Railway Company had in and to, along and across, any and all of the various streets of the city of Lincoln, and your cross-complainant alleges the fact to be that said decree should now be modified and corrected in this particular, and a supplemental decree should be entered authorizing the sale of all of the property on which the city of Lincoln was given a first and prior lien."

The prayer of this bill was that the original decree "be corrected, changed, and so modified as to authorize the sale under said decree of any and all interest of every description and kind, including the rights and right of way, the franchise and franchises, of the Home Street Railway Company in and to any and all of the" streets in the city of Lincoln. There was no prayer for process, and no subpœna was issued on the bill. Nor was any rule entered or served requiring any one to answer the bill or to otherwise show cause why the relief sought therein should not be granted. But before the bill was filed the solicitors for the city transmitted a copy of it, with a notice of the time when

leave to file it would be asked, to the solicitor who had represented the Home Street Railway Company in the prior proceedings—who was also its president—and he acknowledged receipt thereof. In its title the bill named the Home Street Railway Company, the Fidelity Loan & Trust Company, and William G. Clark, receiver, as defendants. None of these entered an appearance to the bill, or otherwise waived the issuance or service of process thereon.

On January 20, 1906, without any hearing upon the part of defendants, a decree was entered in conformity with the prayer of the supplemental bill. This decree was not granted by the judge who granted the original; nor does it purport to have been granted because the original was not entered in conformity with the court's directions given at the time, or because of any obvious clerical error therein. Indeed, it is conceded that the original decree, as signed and retained among the files, discloses that, as it was drawn up by the solicitors for the city, the portion thereof containing a particular description of the property authorized to be sold thereunder specifically included "all right and franchise of the Home Street Railway Company, and of its component consolidated companies, * * * (the former owners), to construct or operate street railways on any and all of the streets of said city of Lincoln," and that before it was signed these words, as well as the words "right and franchise" elsewhere occurring in that portion, were all stricken out. Why corresponding changes were not made in the earlier portions, containing general language respecting "rights" and "franchises," does not appear, save as there is reason for believing that it was probably thought that such general language was restrained and limited by the words "and hereinafter described" and by the more specific description to which they obviously refer; and it is important to observe, in this connection, that the original decree contained no reservation of any question relating to the claim of the city that its lien and right to a sale included what was embraced in the descriptive words which were stricken out before the decree was signed.

A sale was had under the supplemental decree and was reported to the court. Thereafter the defendants filed objections to a confirmation of that sale upon the ground that the supplemental decree was wholly unauthorized and void, because the court was without jurisdiction of the subject-matter, in that its authority to grant the relief sought by the so-called supplemental bill had terminated long before that bill was filed, and because the court was without jurisdiction of the persons of the defendants, in that they had not been brought before it by any process and had not submitted to its jurisdiction by appearance or otherwise. On January 23, 1907, their objections were overruled and an order was entered confirming the sale. They then severally appealed.

So far as is disclosed by this record, no action of any kind was had in the principal suit of the Fidelity Loan & Trust Company against the railway company after the entry of the original decree on the city's petition of intervention; and it seems to be conceded that the prosecution of that suit was then practically suspended or abandoned, but that

it was never actually dismissed, and the receiver was never discharged. This statement of the case makes it plain, as we think, that the supplemental decree was wholly unauthorized and void, and that the objections to a confirmation of the sale had thereunder should have been sustained. The reasons which sustain this conclusion, briefly stated, are these:

1. Whether or not the terms of the statute and the proceedings of the city authorities thereunder were such as to give the city a lien as comprehensive as was asserted in its petition of intervention was necessarily one of the questions presented for decision at the final hearing upon that petition, and the original decree, when read in the light of familiar rules of interpretation, shows that the lien was held not to be so comprehensive. That decree was not interlocutory, but final, and, if the city felt aggrieved by the rejection of part of its claim, it should have seasonably invoked the corrective authority of the Circuit Court or the revisory authority of this court; but, instead, it caused the decree to be executed in conformity with its provisions, as we interpret them, and then acquiesced therein for a period of more than six years. This, without more, disentitled it to question the correctness of the decree or of the interpretation so put upon it. Albright v. Oyster, 9 C. C. A. 173, 60 Fed. 644; Chase v. Driver, 34 C. C. A. 668, 674, 92 Fed. 780, 786; Bronson v. Schulten, 104 U. S. 410, 418, 26 L. Ed. 797.

2. If that decree did not accord to the city all the relief to which it was entitled upon its petition of intervention, it was because the court erred in the decision of some question of law or fact arising upon the final hearing thereon, and not because there was some obvious clerical error in the decree, or because it did not conform to the court's directions given at the time it was pronounced. The character of the error, if any, was therefore such that the Circuit Court was without authority to correct it, upon a simple motion or petition presented after the expiration of the term at which the decree was entered. Cameron v. McRoberts, 3 Wheat. 591, 4 L. Ed. 467; McMicken v. Perin, 18 How. 507, 511, 15 L. Ed. 504; Brooks v. Railroad Co., 102 U. S. 107, 26 L. Ed. 91; Bronson v. Schulten, 104 U. S. 410, 415, 26 L. Ed. 797; Phillips v. Negley, 117 U. S. 665, 672, 674, 6 Sup. Ct. 901, 29 L. Ed. 1013; Central Trust Co. v. Grant Locomotive Works, 135 U. S. 207, 224, 10 Sup. Ct. 736, 34 L. Ed. 541, 543; Hickman v. Fort Scott, 141 U. S. 415, 12 Sup. Ct. 9, 35 L. Ed. 775; Wetmore v. Karrick, 205 U. S. 141, 151, et seq., 27 Sup. Ct. 434, 51 L. Ed. 745; Patch v. Wabash Railroad Co., 207 U. S. 277, 281, 28 Sup. Ct. 80, 52 L. Ed. 204; Elder v. Richmond Gold & Silver Min. Co., 7 C. C. A. 354, 358, 58 Fed. 536, 540; United States ex rel. Fisher v. Williams, 14 C. C. A. 440, 67 Fed. 384; City of Manning v. German Ins. Co., 46 C. C. A. 144, 107 Fed. 52.

3. The so-called supplemental bill was not in fact such, but was in substance and form a pure bill of review for error of law apparent upon the face of the record, save that it ought to have contained a prayer for process. Such a bill may be brought after the term at which the decree sought to be corrected was entered, but not after the time allowed by statute for taking an appeal therefrom. The time limited

for taking an appeal in this instance was six months, but the bill of review was not brought within that time, nor until several years had elapsed. It came too late. Thomas v. Harvie's Heirs, 10 Wheat. 146, 6 L. Ed. 287; Central Trust Co. v. Grant Locomotive Works, 135 U. S. 207, 227, 10 Sup. Ct. 736, 34 L. Ed. 541, 543; Reed v. Stanley, 38 C. C. A. 331, 97 Fed. 521; Chamberlin v. Peoria, etc., Co., 55 C. C. A. 54, 118 Fed. 32; Cocke v. Copenhaver, 61 C. C. A. 211, 126 Fed. 145; Atlantic Trust Co. v. Dana, 62 C. C. A. 657, 670, 128 Fed. 209, 222; In re Holmes, 73 C. C. A. 491, 142 Fed. 391.

4. A bill of review is not considered as a continuance of the former bill, but as in the nature of an original bill. It prays for process, and an appearance to it is enforced in the same manner as to an original bill. Story, Eq. Pl. (9th Ed.) §§ 383, 403; 2 Dan. Ch. Pr. (6th Am. Ed.) *1575; 3 Dan. Ch. Pr. (6th Am. Ed.) *2065; 2 Hoff. Ch. Pr. 10; Lube, Eq. Pl. (Rapalje Ed.) § 283; Fletcher, Eq. Pl. §§ 919, 934, 941; Curtis, Eq. Prec. (4th Ed.) 124; 2 Bates, Fed. Eq. Pro. § 711, page 764; 1 Foster, Fed. Pr. § 356; Cole v. Miller, 32 Miss. 89, 101; Webb v. Pell, 1 Paige (N. Y.) 564; Heermans v. Montague (Va.) 20 S. E. 899, 902. Here there was no prayer for process, either regular or summary, and none was issued or served. Nor did the defendants enter an appearance to the bill or otherwise waive process thereon. In short, by a new proceeding, essentially ex parte, the original decree, entered and executed more than six years before, was so altered as to give it an effect against the defendants which it did not have before and to take from them what was not intended to be taken when it was rendered. In this there was fatal error. With the expiration of the terms at which the original decree was rendered and the sale thereunder was confirmed, the court lost jurisdiction of the persons of the defendants for all purposes connected with the city's intervention, and that jurisdiction could not be regained, save by lawful process or by their voluntary appearance. Brooks v. Railroad Co. and Wetmore v. Karrick, supra. Had they been brought before the court, they would have been entitled to be heard against the rendition of an altered and enlarged decree against them, and could have availed themselves, for that purpose, of the matters stated in the three paragraphs preceding this. That right could not be cut off by such a proceeding as is here shown without violating the fundamental principles of due process of law. Wetmore v. Karrick, supra.

Other questions were discussed by counsel, but their consideration becomes unnecessary, in the view which we take of those here mentioned.

It follows that the order confirming the sale under the supplemental decree must be reversed, with a direction that the sale be disaffirmed because of the invalidity of that decree; and it is so ordered.