MIOCENE DITCH CItCH CO. v. CAMPION MINING & TRADING CO.

(Circuit Court of Appeals, Ninth Circuit.   July 15, 1912.)

No. 1,977.

APPEAL AND ERROR (§ 1218*)—REVERSAL—RECALL OF MANDATE—FRAUD.

A judgment appealed from having been reversed, and the cause remanded for a new trial, it was tried, and after the court announced its conclusion, but before the making of findings or entry of judgment, petitioners applied for leave to intervene, alleging certain rights in the property, and, while such application was pending and undetermined in the trial court, moved the Court of Appeals to recall the mandate of reversal after the end of the term at which the judgment on appeal was given, on the ground of gross fraud and collusion on the part of the attorneys for the respective parties, etc.  *Held*, that the Court of Appeals had lost jurisdiction at the end of the term, and that the motion should not be granted.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 4719; Dec. Dig. § 1218.*]

Appeal from the District Court of the United States for the Second Division of the District of Alaska.

Action by the Miocene Ditch Company against the Campion Mining & Trading Company.   Judgment for defendant having been reversed, and the cause remanded for a new trial, after trial, but before decision, petitioners, after applying to the trial court for leave to intervene, moved in the Court of Appeals for a recall of the mandate of reversal.   Motion denied.

Frohman & Jacobs, of San Francisco, Cal., for petitioners.

E. S. Pillsbury and Horatio Alling, both of San Francisco, Cal.. for respondent Miocene Ditch Co.

Before GILBERT, ROSS, and MORROW, Circuit Judges.

ROSS, Circuit Judge.   By petition filed herein on behalf of the Wild Goose Mining & Trading Company and C. B. Greeley the court is asked to recall its mandate issued upon a final judgment here given at the September term, 1911, by which judgment that of the trial court was reversed, and the cause remanded to it for a new trial. Upon the going down of the mandate, the cause was again set for trial and tried, after which the trial court announced its conclusion, but before the making of findings or the entry of judgment the present petitioners presented to the court a petition for leave to there intervene in the case and set up their alleged rights in the property in question.   That application it appears is still pending and undetermined in the court below.   The moving papers in the proceedings here further show that the motion made for the recall of our mandate is based upon alleged collusion between the attorneys for the respective parties to the suit, to the alleged injury of the petitioners, who now claim to be the real parties in interest.   The motion not having been made until several months after the end of the term at which the judgment of this court was given and its mandate sent down, the

respondent raises the question of the jurisdiction of the court to grant the petitioners' motion by moving to dismiss the petition. However gross the fraud alleged as the basis of the petitioners' request may be, and however much it may entitle the petitioner to intervene in the case where it is now pending, or to file an independent or other bill to obtain redress, we are of the opinion that this court is without power to recall its mandate and vacate its judgment under the circumstances appearing. The general rule that jurisdiction of the federal courts over their judgments and orders ceases with the ending of the term and the issuance of mandate is not disputed, but the petitioners contend that the rule does not apply where the judgment or order complained of was procured by fraud.

A motion to set aside a judgment for fraud after the term has in it, as said by Judge McCrary in Grames v. Hawley (C. C.) 50 Fed. 319, "all the elements of a bill in chancery." The court there further said:

"The fact that fraud in the settlement of this suit is charged in no manner affects the question of jurisdiction or the mode of acquiring it. A judgment can no more be set aside upon motion after the term upon the ground of fraud than upon any other ground. A hearing upon proper notice upon that question is the right of the party charged with the fraud. We cannot assume the truth of the charge for the purpose of affecting the decision of the question of jurisdiction."

In United States v. Aakervik (D. C.) 180 Fed. 137, 143, it was said by Judge Wolverton:

"Courts generally, excepting some perhaps of the more limited, have jurisdiction to reverse their own judgments and decrees during the term at which they are rendered. In pursuance of such authority, they may, for error of law, or for fraud, mistake, or any irregularity that might seem to them to have affected either of the parties to the controversy injuriously, set aside their judgments and decrees, and award a new trial or rehearing, and thus give opportunity for righting whatever wrong may have been engendered. After the term has ended, however, the authority of the courts for this purpose ceases, unless extended by statute, or by motion, or some appropriate procedure taken within the time. This rule applies as well to equity procedure as to procedure at law. Other means of relief for the errors of the court are usually afforded by writ of error or appeal, and in equity a bill of review will lie, within rules prescribed by law, for evidence discovered after the decree has become final. All such proceedings are taken and prosecuted in the same suit or action, and not by separate controversy. When, therefore, the term is at an end without the appropriate initiation of an available proceeding to revise or set aside the court's final judgment or decree, and no appeal or other means of review is prosecuted within the time afforded by authoritative regulation, such judgment or decree becomes an absolute finality, forever binding upon the parties and their privies, utterly without power of change, revision, revocation, or relief within the cause or proceeding in which it is rendered. There are many causes, however, for which a new and independent suit will lie to set aside or annul a judgment or decree. Some of them may be mentioned. Thus, where the unsuccessful party has been prevented from exhibiting his case fully by fraud or deception practiced on him by his opponent, as by keeping him away from court, or a false promise of a compromise, or where the defendant never had knowledge of the suit, being kept in ignorance by act of the plaintiff, or where an attorney fraudulently or without authority assumes to represent a party and connives at his defeat, or where the attorney regularly employed sells out his client's interest to the other side—these and similar cases which go to indicate that

there has never been any real contest in the trial or hearing of the case afford grounds for impeachment by suit instituted directly for that purpose.

" 'On the other hand,' says Mr. Justice Miller, in United States v. Throckmorton, 98 U. S. 61; 66 (25 L. Ed. 93), 'the doctrine is equally well settled that the court will not set aside a judgment because it was founded on a fraudulent instrument, or perjured evidence or for any matter which was actually presented and considered in the judgment assailed.' "

In Craven v. Canadian Pacific Railroad Company (C. C.) 62 Fed. 170, a judgment was entered pursuant to an agreement by the attorneys for the respective parties which it was subsequently claimed was unauthorized. Judge Putnam, after setting out the agreement, said:

"While the court might not enforce such an agreement before judgment is entered, if unauthorized as between attorney and client (Holker v. Parker, 7 Cranch, 496, 3 L. Ed. 396). and may, and perhaps should, on equitable principles reopen a judgment at the same term, entered on such an agreement, if so unauthorized (Dalton v. Railway Co., 159 Mass. 221, 34 N. E. 261, 38 Am. St. Rep. 410), yet the court is not required of its own motion to look behind the signatures of the attorneys. To hold otherwise would be to reverse the rules governing the relations between the court and bar. Consequently this judgment was regularly entered, and the error, if any, was not that of the court or its clerk. Therefore, after the term at which the judgment was entered was finally adjourned, the court had no further control over the judgment. The rule is well stated in Hickman v. Ft. Scott, 141 U. S. 415 [12 Sup. Ct. 9, 35 L. Ed. 775]."

Hickman v. Ft. Scott was an application by petition to a court of law after its judgment had been reversed and a different judgment directed to be entered to so change the record of the original judgment as to make the case materially different from that presented to the court for review; the general object of the petition being to obtain "a new trial on account of gross and vital errors in the findings of facts," and also to have the record amended "by allowing certain findings of fact to appear, some of which findings were unavoidably and others accidentally omitted," the petition further stating that:

"It is desired only that the record should be so amended as to state as well as import the truth, and that the plaintiff should have an opportunity of having the actual facts of the controversy taken into consideration by this court, and, if necessary, by the Supreme Court before the matter finally passes in rem judicatam. The decision of the Supreme Court was based upon an imperfect and erroneous report of the cause, and all that the plaintiff now desires to do is to have the record placed in such shape that the truth may be judicially ascertained before final judgment against him."

The Supreme Court said:

"We know of no precedent for such a proceeding as this, nor is there any principle of law upon which it could be based. In Bronson v. Schulten, 104 U. S. 410, 415 [26 L. Ed. 797], the court, after adverting to the general rule that the judgments, decrees, or other orders of a court, however conclusive in their character, are under its control during the term at which they are rendered, and may be set aside, vacated, modified or annulled by it, said: 'It is a rule equally well established that, after the term has ended, all final judgments and decrees of the court pass beyond its control, unless steps be taken during that term, by motion or otherwise, to set aside, modify, or correct them; and, if errors exist, they can only be corrected by such proceeding by a writ of error or appeal as may be allowed in a court which by law can review the decision. So strongly has this principle been applied by this court that, while realizing that there is no court which can review its decision, it

has invariably refused all applications for rehearing made after the adjournment of the court for the term at which the judgment was rendered. And this is placed upon the ground that the case has passed beyond the control of the court.' The same principles had been announced in Sibbald v. United States, 12 Pet. 488, 492 [9 L. Ed. 1167]. The exceptions to the general rule, such as suits in equity, and writs of error coram vobis at law, do not embrace the present application. See, also, Phillips v. Negley, 117 U. S. 665, 674, 675 [6 Sup. Ct. 901, 29 L. Ed. 1013]; Cameron v. McRoberts, 3 Wheat. 591 [4 L. Ed. 467]; McMicken v. Perin, 18 How. 507, 511 [15 L. Ed. 504]."

Moreover, it appears that the new trial which this court by its judgment directed has been had subsequent to which and before judgment therein the present petitioners appeared in that court with a motion to reopen the case and permit them to intervene, which motion, so far as appears, is still pending—from all of which it is seen that the trial court has at least entered upon the performance of what this court, by its judgment, directed it to do, and that the present petitioners have submitted themselves to the jurisdiction of that court, acting under the judgment and mandate here sought to be avoided.

The petition is dismissed, at petitioners' cost.